Richard A. **LOTT**, Plaintiff,

v.

**GOODYEAR AEROSPACE CORPORATION,** Defendant.

**Civ. A. No. C 74–1115.**

United States District Court,
N. D. Ohio, E. D.

June 11, 1975.

Richard A. French, Ass't U. S. Atty., Cleveland, Ohio, Bruce C. Heslop, Atty., U. S. Dept. of Labor, Cleveland, Ohio, for plaintiff.

Edward C. Kaminski, Buckingham, Doolittle & Burroughs, Akron, Ohio, for defendant.

### MEMORANDUM AND ORDER

WILLIAM K. THOMAS, District Judge.

Richard A. Lott brings this action against his employer, defendant Goodyear Aerospace Corporation, under section 9 of the Military Selective Service Act of 1967, as amended (Act) (50 U. S.C. App. § 459). The Secretary of Labor is prosecuting the action, on behalf of the plaintiff, under authority of section 459(d). The same section confers jurisdiction on this court.

Plaintiff was first employed by defendant as a full time employee in September, 1950 at Akron, Ohio. As a member of the military reserve (reservist), plaintiff was absent from his position to perform reserve duty and training on September 15 and 16, 1973. Plaintiff claims, and defendant denies, that defendant has

> failed and refused to offer plaintiff opportunity to perform overtime work to the extent he would have enjoyed had he not been absent for military reserve duty and training on the aforesaid dates.

Each party moves for summary judgment. The case is considered on the cross motions, plaintiff's request for admissions, defendant's answer thereto, and the briefs of the parties.

### I.

Hours of work and overtime of hourly rated employees at Goodyear Aerospace are governed by Article VI of the collective bargaining agreement in effect between Goodyear Aerospace and International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW), and its Local No. 856, UAW. Overtime is voluntary, paragraph 214 permitting employees to "refuse overtime." Overtime opportunities are to be equalized.[1] Paragraph 218, on the basis of which plaintiff was charged with overtime, provides:

> All hours offered or worked will be charged on the daily overtime board.

Under section 6 the company is required to post notices of week end overtime. Overtime schedules were posted for Saturday, September 15 and Sunday, September 16. The entire second shift, of which plaintiff Lott was a part, was scheduled to work overtime on both days.

---

1. Equalization is dictated by the opening paragraph of Art. VII, section 7, Overtime Opportunities. It states:

The purpose of overtime equalization is to provide the opportunity to work overtime when available and the intent is to schedule the low-houred employee.

In its answer to plaintiff's requests for admissions, defendant Goodyear Aerospace states

That a schedule for overtime was posted for Saturday, September 15, 1973, and the plaintiff refused to accept the overtime work.

Similarly, defendant states

Overtime hours were posted for work to be performed on Sunday, September 16, 1973, and the plaintiff refused to accept the overtime.

As to September 15, 1973, defendant further states that "the plaintiff was charged as if he had worked 12 overtime hours." As to Sunday, September 16, 1973, defendant states that "plaintiff Richard A. Lott was charged as if he had worked 16 overtime hours." Albeit it was because of his military reserve duty, plaintiff's refusal to work overtime hours on the week end of September 15–16, 1973, caused the defendant to charge him with 12 Saturday hours and 16 Sunday hours on the overtime board. Whether section 9 of the Act prohibits this deduction of the plaintiff's overtime entitlement is the issue for decision.

## II.

Plaintiff mainly rests his claim on section 9(c)(3) of the Act which reads:

Any person who holds a position described in paragraph (A) or (B) of subsection [9(b)] shall not be denied retention in employment or any promotion or other incident or advantage of employment because of any obligation as a member of a reserve component of the Armed Forces of the United States.

Section 9(c) is entitled "Service considered as furlough or leave of absence." Matching this title, 9(c)(1) states that

Any person who is restored to a position in accordance with the provisions of paragraph (A) or (B) of subsection [9(b)] shall be considered as having been on furlough or leave of absence during his period of train-

ing and service in the armed forces, . . . .

Still fitting within the title of 9(c), subsection 9(c)(2) is actually a codification of the principle of *Fishgold v. Sullivan Dry Dock & Repair Co.*, 328 U.S. 275, 66 S.Ct. 1105, 90 L.Ed. 1230 (1946). Section 9(c)(2) declares it to be the sense of Congress that

. . . any person who is restored to a position in accordance with the provisions of paragraph (A) or (B) of subsection [9(b)] should be so restored in such manner as to give him such status in his employment as he would have enjoyed if he had continued in such employment continuously from the time of his entering the armed forces until the time of his restoration to such employment.

Clearly having nothing to do with section 9(c)'s title, quoted above, 9(c)(3) serves a distinct and different purpose. Applying to a person "who holds a position" in government or private employment, this subsection prohibits denials of employment rights because "of any obligation" as a reservist in this country's armed forces. In contrast, subsections 9(c)(1) and (2) extend the protection of employment rights to discharged members of the armed forces who are "restored to a position" in government or private employment.

Any doubt that the title of subsection 9(c)(1) does not supply a rule of construction applicable to subsection 9(c)(3), as defendant argues, is dispelled by the legislative history of this provision. Subsection 9(c)(3) was one of the amendments added in 1968 to the Military Selective Service Act of 1967. Describing the purpose of the new subsection the House Committee report accompanying H.R. 1093 stated:

It assures that these reservists will be entitled to the same treatment as their coworkers without such military obligation.

H.Rep.No.1303, 90th Cong., 2d Sess., at 3 (1968). The report of the Senate Com-

mittee on Armed Services to accompany H.R. 1093 stated:

> This bill is intended (1) to prevent reservists and National Guardsmen not on active duty who must attend weekly drills or summer training from being discriminated against in employment because of their Reserve membership . . ..

S.Rep.No.1477, 90th Cong., 2d Sess., at 1–2, U.S.Code Cong. & Admin.News, p. 3421 (1968). The report further stated:

> It [section 9(c)(3)] provides that these reservists will be entitled to the *same treatment afforded their coworkers not having such military obligations* by requiring that employees with Reserve obligations "shall not be denied retention in employment or other incident or advantage of employment because of any obligation as a member of a Reserve Component of the Armed Forces of the United States." (Emphasis supplied.)

S.Rep.No.1477, 90th Cong., 2d Sess., at 2, U.S.Code Cong. & Admin.News, p. 3421 (1968). This legislative history does not support defendant's argument that

> . . . retention in employment, promotion and other incidents or advantages of employment must be afforded the serviceman on the same terms and conditions as would be afforded to any person on a furlough or leave of absence.

Rather, the legislative history indicates that reservists who are required to attend weekly drills

> will be entitled to the same treatment afforded their coworkers not having such military obligations.

Opportunity to work overtime hours easily qualifies as an "incident or advantage of employment," one of the protections guaranteed to a reservist by subsection 9(c)(3). Since plaintiff Lott's departmental coworkers on his second shift were entitled to work over-time on September 15 and 16, 1973, or to decline the opportunity, the plaintiff was entitled to the same treatment. However, his forced attendance on reserve duty on that week end prevented him from accepting the opportunity to work overtime, if he chose. Lott could only refuse. Thereby, he was charged with overtime as if he had worked on Saturday, September 15 and Sunday, September 16, 1973.

Defendant concedes that the plaintiff's unavailability for overtime on account of his reserve obligation caused him to suffer some detriment. But defendant argues that this reasoning

> . . . overlooks the fact that all employees are charged with overtime, for purposes of equalization without regard to the reason that the employee may refuse or be unavailable to accept that overtime work.

The argument continues:

> The mandatory language of the collective bargaining agreement leaves no doubt as to the company's collective bargaining contractual duty in this matter: "All hours offered or worked will be charged on the daily overtime board." *Contract* ¶ 218 at p. 64.

The defendant then says

> In point of fact, the overtime equalization policy of the Contract is neutral on its face and neutral in its application. It applies with equal force to persons that are sick; to persons that have personal business to attend to; to persons on leave of absence for Union business; to persons that are absent; to persons that are pregnant; and to persons, such as the Plaintiff, who are engaged in military reserve training.

On its face Contract ¶ 218 is neutral to all employees, and defendant insists that the company neutrally applies the section. However, to apply this provision to persons on leave of absence or absent for the other identified reasons, and with equal force to military reservists would permit a collective bar-

gaining agreement to nullify the express protections of section 9(c)(3). Carrying out its congressional purpose section 9(c)(3) entitles a reservist, who cannot take advantage of overtime work because of his military duty, to be equated with a person who is able to work overtime.[2] Since the latter person draws overtime pay, unless he voluntarily chooses not to exercise the opportunity, the reservist should not be marked up for overtime that he could not take advantage of because of his military duty.

Implicit in the provision "that employees may refuse overtime," is the duty of the employee refusing overtime to notify the company of his refusal. Indeed, the next sentence of paragraph 214 of Article VI fixes Friday noon as the latest time for notifying the company that the employee is "unable to work such overtime." This requirement, applicable to all employees, is reasonable and enforcible. A failure to give such notice would warrant the employer to mark up the offered overtime pursuant to the provisions of paragraph 218, *supra*.

■ Hence, the plaintiff was required to notify the company that he was refusing overtime because of his military obligation. A failure to give such notice would operate to forfeit the plaintiff's right to assert the advantage of section 9(c)(3). His refusal, acknowledged in the defendant's answer to requests for admissions,[3] is interpreted by this court to mean that he gave adequate notice that his refusal to work overtime was due to his reserve duty commitment.

Plaintiff also rests his claim on the alleged violation of section 9(g)(4), 50 U.S.C.App. § 459(g)(4). Plaintiff argues that to charge plaintiff with overtime hours

> which he was unable to work as a result of his absence for weekend drills as a reservist causes him to suffer a loss of "status" in his position contrary to Section 9(g)(4) of the Act.

It has been concluded that section 9(c)(3) and its protection of an "incident or advantage" is particularly applicable to military reservists. Therefore, it is unnecessary to consider section 9(g)(4), which generally provides

> Upon his release from a period of such active duty for training . . . such employee shall be permitted to return to his position with such seniority, status, pay, and vacation as he would have had if he had not been absent for such purposes.

Judgment is entered in favor of the plaintiff and against the defendant. The defendant is directed to delete from its overtime records the overtime charged to the plaintiff for Saturday, September 15 and Sunday, September 16, 1973.

It is so ordered.

2. *Foster v. Dravo Corp.*, 420 U.S. 92, 95 S. Ct. 879, 43 L.Ed.2d 44 (February 18, 1975) holds that a returning veteran must meet the bona fide work requirement of a collective bargaining agreement to guarantee him vacation rights under the agreement. *Foster* construes § 9(c)(1) and (2), but the result reached here consistently construes § 9(c)(3). Plaintiff Lott had performed whatever work prior to the week end of September 15–16 that was necessary to qualify him to work overtime.

3. The defendant's answers to the requests for admissions are accepted as controlling even though it is stated in defendant's brief
> Lott did not report for the scheduled overtime on Saturday. No reason was given for his failure to report for that work. The Sunday work was refused by Mr. Lott.