**Benjamin R. KIDDER, Plaintiff,**

v.

**EASTERN AIR LINES, INC., Defendant.**

**No. 78–598–Civ–SMA.**

United States District Court,
S. D. Florida,
Miami Division.

Dec. 27, 1978.

---

William H. Berger, U. S. Dept. of Labor, Sol. of Labor, Atlanta, Ga., for plaintiff.

William G. Bell, Jr., Carmen L. Leon, Miami Intern. Airport, Eastern Airlines Legal Dept., Miami, Fla., for defendant.

## MEMORANDUM ORDER DENYING DEFENDANT'S MOTION TO DISMISS AND GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

ARONOVITZ, District Judge.

This cause came on for consideration upon the motion of defendant Eastern Air Lines, Inc., to dismiss the complaint for lack of jurisdiction and upon plaintiff Benjamin R. Kidder's motion for summary judgment. The court having considered the record, and the arguments of counsel, and being otherwise fully advised in the premises, hereby finds that defendant's Motion to Dismiss should be denied and plaintiff's Motion for Summary Judgment should be granted.

Plaintiff Benjamin R. Kidder, a mechanic with defendant Eastern Air Lines, Inc.,

since August 14, 1973, and a member of the United States Army National Guard at all times pertinent, brought this action claiming that defendant had violated his rights as a civilian employee of defendant in contravention of 38 U.S.C. § 2021, *et seq.* (commonly referred to as the Veteran's Reemployment Rights Act), when defendant failed to pay him for the Memorial Day, 1977, holiday (May 30, 1977).[1]

The basis for defendant's denial of payment was that Mr. Kidder was on a military leave of absence for the period May 22, 1977 to June 4, 1977, performing active duty for training with his National Guard unit, and under the collective bargaining agreement between the defendant and District 100 of the International Association of Machinists and Aerospace Workers, employees of defendant will not receive holiday pay if they are classified as being on a leave of absence on the date of the holiday.[2]

### (A) *Motion To Dismiss*

In response to the filing of plaintiff's complaint, defendant moved to dismiss on the ground that the court lacks jurisdiction because actions under the Veteran's Reemployment Rights Act have been preempted by the Railway Labor Act, 45 U.S.C. § 151, *et seq.,* and exclusive jurisdiction for resolution of this dispute is in the National Railroad Adjustment Board and its appropriate System Board of Adjustment.

In 1958, the Supreme Court considered this very issue in *McKinney v. Missouri-K.-T. R. Co.,* 357 U.S. 265, 78 S.Ct. 1222, 2 L.Ed.2d 1305 (1958), and ruled that a veteran:

> [W]as not obligated, before bringing suit in the District Court under [38 U.S.C. § 2022] * * * to pursue remedies possibly available under the grievance procedure set forth in the collective bargaining agreement or before the National Railroad Adjustment Board. [*id.* at 268, 78 S.Ct. at 1225]

The Court further held that:

> "Nowhere is it suggested that before a veteran can obtain the benefit of this expeditious procedure and the remedies available to him in the District Court he must exhaust other avenues of relief possibly open under a collective bargaining agreement or before a tribunal such as the National Railway Adjustment Board. On the contrary, the statutory scheme contemplates the speedy vindication of the veteran's rights by a suit brought immediately in the District Court, advanced on the calendar before other litigation, and prosecuted with the assistance of the United States Attorney. Only thus, it evidently was thought, would adequate protection be assured the veteran, since delay in the vindication of re-employment rights might often result in hardship to the veteran and the defeat, for all practical purposes, of the rights Congress sought to give him. To insist that the veteran first exhaust other possibly lengthy and doubtful procedures on the ground that his claim is not different from any other employee grievance or claim under a collective bargaining agreement would ignore the actual character of the rights asserted and defeat the liberal procedural policy clearly manifested in the statute for the vindication of those rights. [*id.* at 270, 78 S.Ct. at 1225–1226]

Accord, *Moe v. Eastern Air Lines, Inc.,* 246 F.2d 215, 218 (5th Cir. 1957) *cert. den.* 357 U.S. 936, 78 S.Ct. 1380, 2 L.Ed.2d 1550 (1958); *Armstrong v. Baker,* 394 F.Supp. 1380, 1386–1387 (N.D.W.Va.1975). Cf.

---

1. More specifically, plaintiff bases his claim on 38 U.S.C. § 2021(b)(3), which provides: "Any person who holds a position described in Clause (A) or (B) of subsection (a) of this section shall not be denied retention of employment or any promotion or other incident or advantage of employment because of any obligation as a member of a Reserve component of the Armed Forces."

2. Article 10 of the collective bargaining agreement simply provides that employees of defendant will receive 10 holidays per year, one of which is Memorial Day. However, this Article has been interpreted in arbitration to mean that employees of defendant must be in pay status on the date of the holiday to be eligible for pay for that day. Employees on unpaid absences are not eligible for holiday pay.

*Beckley v. Lipe-Rollway Corp.,* 448 F.Supp. 563, 567 (N.D.N.Y.1978).

• Defendant insists, however, that *McKinney* is no longer the law after *Andrews v. Louisville & Nashville R. Co.,* 406 U.S. 320, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972). In *Andrews,* the Supreme Court overruled its prior decision in *Moore v. Illinois Central R. Co.,* 312 U.S. 630, 61 S.Ct. 754, 85 L.Ed. 1089 (1950), where it had been established that "a railroad employee who elected to treat his employer's breach of the employment contract as a discharge was not required to resort to the remedies afforded under the Railway Labor Act for adjustment and arbitration of grievances, but was free to commence in state court an action based on state law for breach of contract" (406 U.S. at 321, 92 S.Ct. at 1564). Defendant argues that the decision of the Supreme Court in *Andrews* requires that *all* controversies between an employer covered by the Railway Labor Act and one of its employees must be pursued through the established grievance procedure and the National Railroad Adjustment Board and cannot be relitigated *de novo* in federal court.

This argument misconceives the holding in *Andrews.* The general rule that the grievance procedure and the National Railroad Adjustment Board provide the primary and exclusive method for resolution of a "minor dispute" i. e., a dispute relating "either to the meaning or proper application of a particular provision [of a collective bargaining agreement] with reference to a specific situation . . . ." (*Elgin, Joliet & Eastern R. Co. v. Burley,* 325 U.S. 711, 723, 65 S.Ct. 1282, 1290, 89 L.Ed. 1886 (1945), was clearly in existence in 1958 when the Supreme Court decided *McKinney.* See *Slocum v. Delaware L. & W. R. Co.,* 339 U.S. 239, 70 S.Ct. 577, 94 L.Ed. 795 (1950)). The decision in *Andrews* simply removed "an exception to the otherwise mandatory rule of submission of [minor] 'disputes' to the Board of Adjustment" (*Hages v. Aliquippa & Southern R. Co.,* 427 F.Supp. 889, 893 (W.D.Pa.1977)), and did not create any new rule of law not in existence at the time *McKinney* was decided.

█ What defendant has failed to grasp, therefore, is that both before and after *Andrews,* the established law was and is that the Railway Labor Act mandates exclusive jurisdiction in the grievance procedure and the National Railroad Adjustment Board for the resolution of claims which are founded solely and exclusively on the collective bargaining agreement. Indeed in *Andrews* itself, the Supreme Court stated that "it is conceded by all that the only source of petitioner's right not to be discharged, and therefore to treat an alleged discharge as a 'wrongful' one that entitles him to damages, is the collective-bargaining agreement between the employer and the union" (406 U.S. at 325, 92 S.Ct. at 1565). See *Union Pacific R. Co. v. Sheehan,* —— U.S. ——, 99 S.Ct. 399, 58 L.Ed.2d 354 (1978), wherein the Supreme Court reaffirmed that the National Railroad Adjustment Board was the exclusive arbiter of "disputes arising out of the interpretation of collective-bargaining agreements."

The instant case represents a completely different situation, for there is no dispute concerning the application or interpretation of the holiday pay provision of the collective bargaining agreement. Rather the plaintiff here seeks a remedy expressly granted by a federal law and requests a construction by a federal court of that federal law in the context of a clear contract provision. As the Supreme Court held in *McKinney v. Missouri-K.-T. R. Co., supra,* "the rights [the plaintiff] asserts are rights created by federal statute . . . . [Plaintiff] sues not simply as an employee under a collective bargaining agreement, but as a [reservist] asserting special rights bestowed upon him in furtherance of a federal policy to protect those who have served in the Armed Forces [357 U.S. at 268–269, 78 S.Ct. at 1225]."

Significantly, in an analogous situation, the Court in *Healen v. Eastern Air Lines, Inc.,* 9 EPD ¶ 10,023 (N.D.Ga.1973), an action under Title VII of the Civil Rights Act

of 1964 (42 U.S.C. § 2000e, *et seq.*),[3] rejected the very argument posited by defendant herein, i. e., that the grievance procedure and the System Board of Adjustment was "the exclusive, mandatory, and statutory established forum for resolution of the disputes which are the basis of this action" (9 EPD ¶ 10,023 at p. 7238).

As the Court ruled:

This argument is unsound for several reasons. First of all, this is not a dispute over the application or interpretation of a provision of the collective bargaining agreement. The challenged terms of the contract are absolutely clear in their effect and that is precisely what is attacked here. In light of the clear meaning of the collective bargaining agreement, there is no way that relief could be obtained through the traditional arbitration process. However, an even more compelling reason is the charge that certain employment policies of the defendant discriminate on the basis of sex. Thus, the rights asserted here fall squarely within the purview of Title VII. Title VII was intended to create rights and protect interests completely separate and apart from those arising under the collective bargaining and arbitration mechanisms of the Railway Labor Act or the National Labor Relations Act. [citations omitted]

\*    \*    \*    \*    \*    \*

The recent Supreme Court decision, *Andrews v. Louisville & Nashville,* 406 U.S. 320, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972), does not command a contrary result. That case did not involve discriminatory employment practices actionable under Title VII. It simply pertained to employment rights arising only under a collective bargaining agreement, and, in that

sense, it strongly reaffirmed the established principle that disputes over such rights must first be subject to the grievance and arbitration process. The rights claimed in the present case, however, find their source in Title VII and not in the collective bargaining agreement or contract of employment. [*id.*]

Additionally, other federal courts have also denied motions to dismiss based on a Railway Labor Act preemption argument when the claim is based on a federally created cause of action. See e. g., *Goclowski v. Penn. Central Transp. Co.,* 571 F.2d 747, 761 n. 18 (3rd Cir., 1977) (breach of duty of fair representation); *Lum v. China Airlines Co., Inc.,* 413 F.Supp. 613, 615–616 (D.Haw.1976) (violation of 45 U.S.C. § 152, subd. 4—discharge in violation of right to join, organize and assist in organizing a union); *Pittman v. Grand Trunk Western R. Co.,* 17 EPD ¶ 8,568 (E.D.Mich.1978) (violation of Title VII and of the Railway Labor Act).

■ It is thus the opinion of this court that defendant's motion to dismiss on the ground that the Railway Labor Act preempts the jurisdiction of the court to decide this action is without merit and must be denied.

Defendant also argues that because plaintiff has activated the grievance machinery, and has processed the grievance to Step Three of the procedure he has effectively elected his choice of forum. This argument must also be rejected under the rationale of *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974).

In *Alexander,* the Supreme Court dealt with the "proper relationship between federal courts and the grievance-arbitration

---

**3.** This court acknowledges the increasing recognition given by the courts to the analogy between Title VII actions and those arising under the Veteran's Reemployment Rights Act, particularly as to matters of remedy and procedure. See e. g., *Franks v. Bowman Transportation Co.,* 424 U.S. 747, 778, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976); *King v. Georgia Power Co.,* 295 F.Supp. 943, 949 (N.D.Ga.1968) cited with approval in *Rios v. Reynolds Metal Co.,* 467

F.2d 54, 57 (5th Cir., 1972); *Acha v. Beame,* 531 F.2d 648, 655–656 (2nd Cir., 1976); *Chernoff v. Pandick Press, Inc.,* 440 F.Supp. 822, 825 (S.D.N.Y.1977); *Mowdy v. Ada Board of Education,* 76 F.R.D. 436, 439 (E.D.Okl.1977); *Cox v. City of Kansas City,* 76 F.R.D. 459 (W.D.Mo.1977); *Schaller v. Board of Education of Elmwood Local School,* 449 F.Supp. 30, 33 (N.D.Ohio 1978).

machinery of collective-bargaining agreements in the resolution and enforcement of an individual's rights to equal employment opportunities under Title VII of the Civil Rights Act of 1964 . . . ." (*id.* at 38, 94 S.Ct. at 1015). Of particular significance to this case is the statement by the Court concerning:

> [t]he role of the arbitrator in the system of industrial self-government. As the proctor of the bargain, the arbitrator's task is to effectuate the intent of the parties. His source of authority is the collective-bargaining agreement, and he must interpret and apply that agreement in accordance with the 'industrial common law of the shop' and the various needs and desires of the parties. The arbitrator, however, has no general authority to invoke public laws that conflict with the bargain between the parties.
>
> \*   \*   \*   \*   \*   \*
>
> If an arbitral decision is based 'solely upon the arbitrator's view of the requirements of enacted legislation,' rather than on an interpretation of the collective-bargaining agreement, the arbitrator has 'exceeded the scope of the submission,' and the award will not be enforced. . . Thus the arbitrator has authority to resolve only questions of contractual rights, and this authority remains regardless of whether certain contractual rights are similar to, or duplicative of the substantive rights secured by Title VII. (*id.* at 52–54, 94 S.Ct. at 1022).[4]

▪ Thus, even if the plaintiff herein had proceeded to arbitration and had received an unfavorable ruling, his right to proceed in this court would not have been extinguished, for the federal courts are the exclusive forum for the vindication of "these distinctively federal rights" (*McKinney v. Missouri-K.-T. R. Co., supra,* 357 U.S.

at 269, 78 S.Ct. 1222). See also *Brink v. Transit-Mix Concrete Corp.,* 83 CCH Labor Cases ¶ 10,463 at pp. 17,860–17,861 (S.D.N.Y.1978) ("Defendants claim waiver by plaintiff having participated in the grievance procedure. This contention is rejected").

(B) *Motion For Summary Judgment*

The court has reviewed the complaint, Defendant's Answers to Plaintiff's Interrogatories, Defendant's Motion To Dismiss and the Affidavit submitted by defendant in support of its opposition to plaintiff's Motion for Summary Judgment and finds that there is no genuine issue as to any material fact. Defendant has also conceded as much. Therefore, consideration of plaintiff's Motion for Summary Judgment, which involves solely a question of law, is properly before the court. See *Central Oil & Supply Corp. v. United States,* 557 F.2d 511, 515 (5th Cir., 1977); *Merrill v. Exxon Corp.,* 387 F.Supp. 458, 463 (S.D.Tex.1974).[5]

▪ The legal issue presented is whether the plaintiff was denied an "incident or advantage of employment" (38 U.S.C. § 2021(b)(3)), when defendant failed to pay him for the Memorial Day, 1977 holiday (May 30, 1977). This very issue was recently addressed by the court in *Hanning v. Kaiser Aluminum and Chemical Corp.,* 82 CCH Labor Cases ¶ 10,070 (E.D.La.1977).

In *Hanning,* two reservists were denied holiday pay by their employer because the holiday fell during the period they were both on active duty for training with their military reserve unit. Under the pertinent collective bargaining agreement, an employee was eligible for holiday pay if he worked during the payroll week in which the holiday fell or during the preceding

4. Compare *Sheehan v. Union Pac. R. Co.,* 576 F.2d 854, 856 (10th Cir., 1978), rev'd on the merits, —— U.S. ——, 99 S.Ct. 1060, 59 L.Ed.2d 98 (1978), where the Tenth Circuit stated: "The [National Railroad Adjustment] Board members are not chosen for their legal expertise; they are chosen to interpret and apply the collective bargaining agreements."

5. The fact that defendant has not filed an Answer to the Complaint does not preclude consideration of plaintiff's Motion for Summary Judgment. See *Southern Pacific Transp. Co. v. National Molasses Co.,* 540 F.2d 213, 214 (5th Cir., 1976); *Hubicki v. ACF Industries, Inc.,* 484 F.2d 519, 522 (3rd Cir., 1973).

payroll week. The reservists in *Hanning* did not work during either week because of their military reserve duty.

After reviewing the legislative history of section 2021(b)(3) of the Act, the court in *Hanning* ruled:

> We read this as meaning that defendant is required, under the statute, to treat reservists on active duty training who find themselves in the position of these two plaintiffs as though they were still at work. They would then have been paid for the July 4th holiday, as were their coworkers without such military obligation. This is so because we find . . . that paid holidays are an 'incident or advantage of employment', which is guaranteed to a reservist under § 2021(b)(3). To interpret the statute otherwise would permit the Collective Bargaining Agreement to nullify plaintiffs' right to certain paid holidays, contrary to the statute.

■ This court is in full agreement with the *Hanning* decision and the others which have held that to the extent that a claimed benefit of employment is an "incident or advantage of employment," a reservist or National Guardsman must be treated as if he had remained at work and must be accorded that benefit if it is based on mere presence at work. Cf. *Moe v. Eastern Air Lines, Inc., supra* 246 F.2d at 220–221. As the court held in *Thomas v. Pacific Northwest Bell Tel. Co.*, 434 F.Supp. 741, 747 (D.Or.1977), "[t]he salutory purpose of the [Act] is to insure that a person who answers his country's call to arms is not required to forfeit civilian employment benefits . . ."

In defense of its failure to pay plaintiff for the Memorial Day, 1977 holiday, defendant argues that the collective bargaining agreement in *Hanning*, unlike the collective bargaining agreement herein, did not bar all employees on a leave of absence from receiving holiday pay, thus the court in *Hanning* correctly held that the agreement on its face discriminated against those on military leave.

This argument totally misses the mark. As noted earlier, the court in *Hanning* based its decision on the legal ground that insofar as "incidents or advantages of employment" are concerned, the Act requires an employer to treat reservists "as though they were still at work" (82 CCH Labor Cases ¶ 10,070 at p. 16,259).[6] The result in *Hanning* would have been the same regardless of how other employees on a leave of absence were treated.

In *Lott v. Goodyear Aerospace Corp.*, 395 F.Supp. 866, 869–870 (N.D.Ohio 1975), the first case dealing with an "incident or advantage of employment" under section 2021(b)(3) of the Act, the court addressed this point:

> On its face Contract ¶ 218 is neutral to all employees, and defendant insists that the company neutrally applies the section. However, to apply this provision to persons on leave of absence or absent for the other identified reasons, and with equal force to military reservists would permit a collective bargaining agreement to nullify the express protections of section [2021(b)(3)]. . . . Carrying out its congressional purpose section [2021(b)(3)] entitles a reservist, who cannot take advantage of overtime work because of his

---

**6.** Further support for the conclusion that holiday pay is an "incident or advantage of employment" is found in the Supreme Court's decision in *Eagar v. Magma Copper Co.*, 389 U.S. 323, 88 S.Ct. 503, 19 L.Ed.2d 557 (1967) rev'g. *per curiam* 380 F.2d 318 (9th Cir. 1966). In *Eagar* the Court awarded holiday pay to veterans who had not been discharged from military service in time to meet the "presence at work" requirement that they be "on the Company's payroll continuously for three (3) months prior to the holiday in question" (380 F.2d at 320). See also *Hollman v. Pratt &*

*Whitney Aircraft*, 435 F.2d 983, 989 (5th Cir., 1970). Defendant's reliance on a trio of vacation benefit cases (*Foster v. Dravo Corp.*, 420 U.S. 92, 95 S.Ct. 879, 43 L.Ed.2d 44 (1975); *Lipani v. Bohack Corp.*, 546 F.2d 487 (2nd Cir., 1976); and *Aiello v. Detroit Free Press, Inc.*, 570 F.2d 145 (6th Cir., 1978)) is misplaced. Those decisions involved substantial work requirements for accrual of the vacation which the veterans had not met. Here, there is no "work requirement" for accrual of holiday pay, only a requirement that an employee be on the payroll the day of the holiday.

military duty, to be equated with a person who is able to work overtime.[7]

So also in *Monroe v. Standard Oil Co.,* 446 F.Supp. 616 (N.D.Ohio 1978), another case involving an "incident or advantage of employment," i. e., the right to work a full 40-hour week in those weeks when weekend reserve drill fell on a scheduled work day, the court specifically ruled:

· [T]he statute here in question forbids denying those in military service incidents or advantages of employment because of their obligations of service. This does not mandate that all employees be treated neutrally or equally. It requires positive action on the part of the employer, and gives to the employee with service obligations a right not given to employees with religious, health, or family obligations, which while they may be of equal concern to the employee, have no relation to the necessity of the Government to defend itself against enemy aggression.

And, in *Carney v. Cummins Engine Co.,* 84 CCH Labor Cases ¶ 10,856 (S.D.Ind.1978), a case involving the same overtime equalization issue as in *Lott,* the Court also held that, "the Act requires the reservist to be treated as if he worked . . . ." (*id.* at p. 19,341). Thus, defendant's argument that a reservist must be treated like any other employee on a non-military leave of absence is incorrect as a matter of law.

Defendant's final argument, made at the hearing, that to award the plaintiff the claimed holiday pay would give him double pay, was explicitly rejected by the Court in *Hanning*:

Defendant's strongest objection, on oral argument, to having employees in the predicament of the instant plaintiffs receive holiday pay is that they then receive

a double benefit. However, on questioning, defendant's attorney admitted that there is no prohibition on any other employee from working to earn additional money on a paid holiday. [82 CCH Labor Cases ¶ 10,070 at p. 16,259]

In view of the fact that the Act "is to be liberally construed . . . ." (*Alabama Power Co. v. Davis,* 431 U.S. 581, 584, 97 S.Ct. 2002, 52 L.Ed.2d 595 (1977), and that "there is an unmistakable Congressional intent [in 38 U.S.C. § 2021(b)(3)] to protect reservists from being disadvantaged in employment merely because of their status as members of the armed services" (*Woods v. Covington County Bank,* 537 F.2d 804, 811 (5th Cir. 1976)), taken together with the prior decisions dealing with section 2021(b)(3), the court finds plaintiff's Motion for Summary Judgment to be well taken because plaintiff clearly would have received pay for the Memorial Day, 1977 holiday had he simply remained at work instead of attending reserve duty.

THEREFORE, for the reasons stated, it is

ORDERED that defendant's Motion to Dismiss be, and it hereby is Denied; and it is

FURTHER ORDERED that plaintiff's Motion for Summary Judgment be, and it hereby is, Granted, and it is

FURTHER ORDERED that a judgment be entered in favor of plaintiff in the amount of $75.60 for wages lost for the Memorial Day, 1977 holiday (May 30, 1977).

---

**7.** Defendant also argues that awarding the plaintiff the claimed holiday pay grants him preferential treatment over other employees. This is true only as to other employees on non-military leaves of absence, not as to employees who remained at work and received the holiday pay. To the extent that reservists on military leaves of absences receive preferential treatment over fellow employees on non-military leaves of absences as to those benefits which are "incidents or advantages of employ-

ment" this is precisely what the Act requires. Compare *Alabama Power Co. v. Davis,* 431 U.S. 581, 97 S.Ct. 2002, 52 L.Ed.2d 595 (1977), where the Supreme Court awarded credit for pension benefit purposes to a veteran for his 2½ years of military service, notwithstanding that "[e]mployees on leave of absence without regular pay . . . are not credited with [pension credit] during their absence from the company" (*id.* at 591, 97 S.Ct. at 2008).