Alan CARNEY, Plaintiff-Appellee,

v.

CUMMINS ENGINE COMPANY, INC., Defendant-Appellant.

No. 78–2379.

United States Court of Appeals, Seventh Circuit.

Heard April 13, 1979.

Decided July 17, 1979.

Rehearing and Rehearing En Banc Denied Aug. 16, 1979.

David L. Gray, Indianapolis, Ind., for appellant.

William H. Berger, Dept. of Labor, Atlanta, Ga., for appellee.

Before CUMMINGS and SPRECHER, Circuit Judges, and BONSAL, Senior District Judge.*

CUMMINGS, Circuit Judge.

Plaintiff sued his employer, Cummins Engine Company of Columbus, Indiana, in order to be permitted to work the overtime hours he missed while he was performing military reserve duty in July of 1975. In the alternative he sought compensation for loss of overtime wages. Both parties moved for summary judgment. Subsequently, the district court granted plaintiff's summary judgment motion and required defendant to grant plaintiff the overtime work opportunities he missed by reason of his National Guard Service or to pay him for the unworked overtime.

The summary judgment was preceded by Judge Dillin's Memorandum of Decision in which he found that plaintiff was assigned to the job of engine assembler on August 26, 1974, until he was transferred to another department of defendant on September 2, 1975. He noted that plaintiff is a member of the Diesel Workers' Union which has a collective bargaining contract with defendant. He found that the agreement between defendant and the Union from 1972 to 1978 provided that overtime opportunities would be distributed equally among employees present, available and qualified to perform the work. Beyond certain specified limits, the employer was required to correct errors in assigning overtime work within 30 days of the time such errors were brought to the employer's attention. If such "out of limits" overtime was not corrected within 30 days or if the employee transferred to another department before making up all the overtime to which he was entitled, the collective bargaining agreement provided that the employer must pay for the accrued overtime even though it was not worked. The agreement also established a recording procedure to account for overtime assignments. If an employee refused proffered overtime work or he was absent when the opportunity for such work arose (other than on a formal or disability leave), he was charged as if he had worked the offered overtime. Until July 1975, this system was applied to reservists so that when they were absent for training they lost overtime opportunities to which they would otherwise have been entitled.

When advised by a compliance officer of the Department of Labor that this system was contrary to the Veterans' Reemployment Rights Act, the employer and the

* The Honorable Dudley B. Bonsal, Senior District Judge of the Southern District of New York, is sitting by designation.

Union modified the agreement to provide that reservists away for training would not be charged as having worked available overtime and would be entitled to make up missed overtime opportunities. However, with regard to reservists this modification suspended the employer's obligation to pay for missed overtime if not offered within 30 days or not made up before the employee transferred departments. The employer defends this aspect of the modification on the ground that the overtime missed by reservists is not attributable to the fault of the employer, unlike accrued overtime resulting from inequitable assignments. The effect of the modification, however, is to defeat the right of reservists to work missed overtime opportunities if—as the plaintiff did here—they transfer departments before working the overtime.

The district court held that plaintiff must prevail under 38 U.S.C. § 2021(b)(3) which provides:

"Any person who holds a position described in clause (A) or (B) of subsection (a) of this section shall not be denied retention in employment or any promotion or other incident or advantage of employment because of any obligation as a member of a Reserve component of the Armed Forces."

Citing *Tilton v. Missouri P. R. Co.*, 376 U.S. 169, 84 S.Ct. 595, 11 L.Ed.2d 590 and *Hanna v. American Motors Corp.*, 557 F.2d 118 (7th Cir. 1977), Judge Dillin ruled that any provisions of the collective bargaining agreement between defendant and the Union could not be used as a basis for denying an employee the rights granted under the foregoing Section of the Veterans' Reemployment Rights Act, and that plaintiff's opportunity to work overtime qualified as an "incident or advantage of employment" within the meaning of that Section. Consequently, defendant was ordered to make up plaintiff's lost overtime opportunities or to pay him appropriate compensation therefor. We affirm.

Defendant admits that during plaintiff's attendance at summer camp with the Indiana National Guard in July 1975, he missed the opportunity to work one 3-hour overtime period on July 15 and an 8-hour period on July 19 (App. 11). Defendant permitted him to make up three hours of overtime before he was transferred to another department on September 2, 1975 (App. 23). However, he was denied the right to make up the remaining eight hours of overtime because the defendant took the position that when he transferred to another department he lost the right to make up cumulative overtime opportunities and was not entitled to be paid for any accumulated unworked opportunities (App. 10, 27). We hold that Section 2021(b)(3) of the Veterans' Reemployment Rights Act precludes such a defense. That Section was enacted in 1968 because Congress considered prior statutory protection for servicemen to be inadequate and wanted to make certain that reservists' economic well being would be disrupted to the minimum extent possible. H.R.Rep. No. 1303, 90th Cong., 2d Sess. (1968) 1, 3; Sen.Rep. No. 1477, reproduced in 3 U.S.Code Cong. & Admin.News (90th Cong., 2d Sess. (1968) 3421–3422).

In accord with *Lott v. Goodyear Aerospace Corp.*, 395 F.Supp. 866 (N.D.Ohio 1975), defendant has conceded that the opportunity to work overtime is an "incident or advantage of employment" within the meaning of Section 2021(b)(3), that said phrase must be broadly construed, that it covers all aspects of the employment relationship, and that Section 2021(b)(3) was enacted to prevent discrimination by the employer against reservist employees (Reply Br. 1–2).

To avoid affirmance of the summary judgment for plaintiff, the employer defendant argues that Section 2024(d) of the Act is the only governing provision. Section 2024(d) provides in pertinent part:

"Any employee not covered by subsection (c) of this section who holds a position described in clause (A) or (B) of section 2021(a) shall upon request be granted a leave of absence by such person's employer for the period required to perform active duty for training or inactive duty training in the Armed Forces of

the United States. Upon such employee's release from a period of such active duty for training or inactive duty training * * * such employee shall be permitted to return to such employee's position with such seniority, status, pay, and vacation as such employee would have had if such employee had not been absent for such purposes * * *." (38 U.S.C. § 2024(d).).

According to defendant, this provision would not permit plaintiff to receive the overtime opportunities that he would have had if he had not been on military leave, since his rights under this Section are limited to seniority, status, pay and vacation. We need not so construe Section 2024(d) because we agree with the *Lott* court and other courts[1] that this case is governed by Section 2021(b)(3).[2] Defendant argues that Section 2024(d) controls here because "general language in a statute [Section 2021(b)(3)] which would otherwise apply is limited and controlled by a section specifically dealing with an issue" (Br. 10). Since the reference to "seniority, status, pay and vacation" in Section 2024(d) is more specific than "other incident or advantage of employment" in Section 2021(b)(3), defendant contends the former must control. This argument, however, ignores the fact that,

as seen, Section 2021(b)(3) was added specifically to protect rights of reservists which had been found to be inadequately protected under Section 2024(d). The general language in Section 2021(b)(3) is best construed as an attempt to assure protection from a wide variety of economic disadvantages that could result from a reservist's absence.[3]

Contrary to defendant's contention, it is not "inconceivable" that Congress could have intended to grant reservists greater protection than veterans returning from active duty. That is the clear import of Section 2021(b)(3), and it is not illogical to extend to reservists some protection, such as the overtime opportunities missed here, that would simply not be practicable for the longer-term absences of veterans.

■ It is immaterial that non-military employees of defendant on leave of absence would not be entitled to overtime opportunities (*Alabama Power Co. v. Davis*, 431 U.S. 581, 591, 97 S.Ct. 2002, 52 L.Ed.2d 595; *Kidder v. Eastern Airlines, Inc., supra*, at pp. 1066-1067 since the right of reservists to such opportunities is governed by statute rather than by the collective bargaining agreement. Nor does it matter that afford-

---

**1.** *Monroe v. Standard Oil Co.*, 446 F.Supp. 616 (N.D.Ohio 1978) (regular pay); *Hanning v. Kaiser Aluminum & Chemical Corp.*, 82 CCH Labor Cases ¶ 10,070 (E.D.La.1977) (holiday pay); *Kidder v. Eastern Airlines, Inc.*, 469 F. Supp. 1060 (S.D.Fla.1978) (holiday pay).

**2.** The defendant construes the district court's imposition of an obligation to make available the missed overtime opportunities as resulting not from the statute but only from defendant's voluntary collective bargaining agreement modification in favor of reservists of the procedure for keeping track of overtime. It argues that this result is contrary to public policy since it will discourage employers from voluntary compliance. In fact, the employer's obligation here was held to be and is a consequence of the statute and would have been the same regardless of its partial voluntary compliance with the Act.

**3.** Defendant asserts that the reasoning of the courts in *Hanning, Kidder, Lott*, and *Monroe* (*supra* note 1) and in this case would compel an employer to pay the reservist as if he had worked when in fact he did not. This is not the

case. *Hanning* and *Kidder* involved entitlement to holiday pay which was available to all employees who were present the week in which the holiday fell. Since all that was required was the mere presence of the employee—and not his actual work—those cases correctly held that the holiday pay could not be withheld when the employee would have been present but for his reserve obligation. *Lott* and *Monroe*, like this case, involved what accommodations an employer is required to make to assure that reservists do not miss work opportunities. In *Lott*, as here, the employer was required to make missed overtime opportunities available. In *Monroe*, the employer was required to manipulate the flexible work schedule so that the reservist was not scheduled for work on days he was required to be in training. It is true that the remedy in *Monroe* was the payment of lost wages. This, however, was the only feasible remedy for the employer's illegal failure to accommodate the reservist's schedule and was not the result of imposing a general obligation on the employer to pay the reservist as if he had worked when he was in training.

ing plaintiff relief might conflict with the collective bargaining agreement between defendant and the Union. *Lott, supra*, 395 F.Supp. at 869–870; see also *McKinney v. Missouri-Kansas-Texas R. Co.*, 357 U.S. 265, 268–269, 78 S.Ct. 1222, 2 L.Ed.2d 1305; *Peel v. Florida Department of Transportation*, 443 F.Supp. 451, 455, 459 (N.D.Fla.1977).

■ Finally, defendant briefly argues that our construction of Section 2021(b)(3) would constitute a taking for a public purpose without compensation in violation of the Fifth Amendment. In the first place, to comply with the judgment below, the defendant need not pay plaintiff for eight hours unworked overtime but need merely permit him to work the eight hours overtime in either his former or present department.[4] To the extent that defendant has the alternative choice of paying plaintiff for unworked time pursuant to the judgment, the statute is clearly constitutional. *Davis v. Alabama Power Co.*, 383 F.Supp. 880, 891 (D.Ala.1974), affirmed *per curiam*, 542 F.2d 650 (5th Cir. 1976), affirmed, 431 U.S. 581, 97 S.Ct. 2002, 52 L.Ed.2d 595; *Jennings v. Illinois Office of Education*, 589 F.2d 935, 938 (7th Cir. 1979), certiorari denied, —— U.S. ——, 99 S.Ct. 2417, 60 L.Ed.2d 1073.

Judgment affirmed.

---

4. Allowing plaintiff to work the overtime hours in his former department would not constitute discrimination against reservists even though other employees are paid for "out of limits" accrued overtime without actually working that overtime when they transfer departments. The overtime rights of non-reservists are governed by the collective bargaining contract and employees accrue overtime rights only if the employer assigns overtime work inequitably in the first place. The statute, however, provides an additional right for a reservist—the right to be offered the overtime he would have been offered had he been working on the days he was on reserve duty. Since this is all that the statute requires, it is not discriminatory to offer such overtime in the former department even though if the overtime had accrued through the fault of the employer it would have become compensable immediately upon the employee's transfer.