**Roger D. MONROE, Plaintiff-Appellee,**

v.

**The STANDARD OIL COMPANY, Defendant-Appellant.**

No. 78–3233.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 5, 1979.

Decided Jan. 24, 1980.

Rehearing and Rehearing En Banc Denied April 15, 1980.

**642**

Paul S. McAuliffe, Cleveland, Ohio, for defendant-appellant.

William D. Beyer, U. S. Atty., Toledo, Ohio, William H. Berger, U. S. Dept. of Labor, Atlanta, Ga., for plaintiff-appellee; James R. Williams, U. S. Atty., Toledo, Ohio, on rehearing.

Before CELEBREZZE and ENGEL, Circuit Judges, and PECK, Senior Circuit Judge.

JOHN W. PECK, Senior Circuit Judge.

This is an appeal by the defendant-appellant, The Standard Oil Company (Sohio), from a summary judgment of the district court granting plaintiff-appellee recovery of wages for time spent attending military reserve meetings during his regularly scheduled work hours.[1] Recovery was predicated on 38 U.S.C. § 2022 and § 2021(b)(3) of the Vietnam Era Veterans' Readjustment Assistance Act of 1974.

The case was submitted to the trial judge by counsel for the parties on a stipulation of facts.

During the years 1975 and 1976, the years in which Sohio allegedly violated the Act, plaintiff-appellee, Roger D. Monroe was a full-time employee of Sohio at its Lima, Ohio, refinery. He was also a member of a unit of the Army Reserve and was required to train with his unit on the third weekend of each month and during the last two weeks of August each year.

Throughout the two years in question, Sohio operated its Lima refinery twenty-four hours per day, seven days per week. The work day was divided into three eight-hour shifts. Sohio rotated its employees' shifts. All employees were scheduled to work five eight-hour days in a row per week, but with a different five-day sequence each week. Under this system, weekend work was distributed equally among employees in the course of a year.

Appellant scheduled Monroe to work a full forty hours each week. Sohio periodically slated appellee to work Saturdays and/or Sundays just as it did Monroe's fellow employees. Except for normal time off and the absences for inactive military reserve training in issue here, plaintiff customarily worked his scheduled forty-hour weeks with occasional overtime.

Employment at the Lima refinery was governed by a collective bargaining agreement between appellant and the Ohio Chemical and Atomic Workers International Union during the pertinent period. Article V, ¶ 23 of that agreement provided:

1. The district court opinion is reported at 446 F.Supp. 616 (N.D.Ohio 1975).

Employees on shift may, by mutual consent and with the consent of their foreman, change shifts provided such change does not require the payment of overtime or premium pay. Where such changes require the payment of overtime or premium pay, such changes may be made only where there exists a critical need of such changes proven to the satisfaction of the Plant Manager.

On four occasions during 1975 and 1976, Monroe was able to change shifts with his fellow employees to accommodate his reserve training and still work a forty-hour week. On twenty-four other days when he was required to train, however, appellee was unable to arrange for an exchange of shifts with other employees. As a result of his absence from the refinery on these days, appellee lost a total of 192 hours of work for which he was not compensated.

Sohio took no steps to provide Monroe with substituted hours or to make up for appellee's lost working time, other than as provided by Article V, ¶ 23 of the collective bargaining agreement. In this regard, Monroe was treated the same as all other Sohio employees under the agreement.

Monroe brought this action against Sohio pursuant to 38 U.S.C. § 2022, asserting that Sohio had violated §§ 2021(b)(3) and 2024(d) of the Act by refusing to rearrange his work schedule to allow him to work a full forty hours per week during those weeks when his military reserve obligation otherwise precluded him from working a full forty hours.

The cause was submitted on the parties' cross-motions for summary judgment. The district court deemed the issue to be whether plaintiff was denied "an incident or advantage of employment," 38 U.S.C. § 2021(b)(3), "when he was unable to exchange shifts with another employee and therefore was unable to work a full forty hour week as employees without military obligations would." The court determined *Lott v. Goodyear Aerospace Corp.*, 395 F.Supp. 866 (N.D.Ohio 1975), *appeal dismissed*, No. 75–2324 (6th Cir. January 21, 1976), to be dispositive of the issue. Sus-

taining plaintiff's cross-motion for summary judgment, the district court held that "being scheduled for a full forty hour week at the defendant's refinery constitutes an incident or advantage of employment" and awarded plaintiff $1,086.72 for wages lost on those "workdates when an accommodation should have been made." This appeal followed.

Appellant contends that it is under no obligation to schedule plaintiff additional working hours or pay him for hours not worked. Sohio further claims that any obligation it owed Monroe was satisfied when it scheduled him to work forty hours per week and granted him the right to switch hours with other employees. We agree.

We begin by looking at two sections of the Act, both of which govern reemployment rights of reservists.

Title 38 U.S.C. § 2024(d) provides in pertinent part:

> Any employee . . . shall upon request be granted a leave of absence by such person's employer for the period required to perform active duty for training or inactive duty for training in the Armed Forces of the United States. Upon such employee's release from a period of such active duty for training or inactive duty for training, . . . such employee shall be permitted to return to such employee's position with such seniority, status, pay and vacation as such employee would have had if such employee had not been absent for such purposes. . . .

Originally enacted in 1960 as 50 U.S.C. § 459g(4), section 2024(d) extended, for the first time, the rights set forth therein to reservists "who are absent from employment for only a short period of time, such as 2-hour drills, weekend drills, 2-week annual encampments, and special training periods . . . . S.Rep.No.1672, 86th Cong., 2d Sess. 2, *reprinted in* (1960) U.S. Code Cong. & Admin.News, pp. 3077, 3078.

Section 2024(d) guarantees terms and conditions of reemployment to reservists returning from inactive duty training. It

does not, however, protect reservists from discrimination by their employers between training assignments. In the years following the enactment of § 2024(d), discriminatory employment practices intensified. Congress responded by passing what is now 38 U.S.C. § 2021(b)(3) [2] to remedy this problem. Title 38 U.S.C. § 2021(b)(3) reads in pertinent part:

> Any person who [is employed by a private employer] shall not be denied retention in employment or any promotion or other incident or advantage of employment because of any obligation as a member of a reserve component of the Armed Forces.

The problem to be addressed under this statute and the nature of the remedy it was to provide were stated in a report of the Senate Armed Forces Committee. In Senate Report No. 1477, it said:

> Employment practices that discriminate against employees with reserve obligations have become an increasing problem in recent years. Some of these employees have been denied promotions . . . or discharged because of [their training obligations]. [Section 2021(b)(3)] is intended to protect members of the Reserve . . . from such practices. It provides that these reservists will be entitled to the *same treatment afforded their coworkers* not having such military obligations . . . . [emphasis added] S.Rep.No.1477, 90th Cong., 2d Sess., *reprinted in* (1968) U.S.Code Cong. & Admin.News, pp. 3421, 3421.

*Lott v. Goodyear Aerospace Corp.*, 395 F.Supp. 866 (N.D.Ohio 1975), *appeal dismissed*, No. 75–2324 (6th Cir. January 21, 1976), relied on by the district court, was one of the first cases to interpret section 2021(b)(3). In *Lott*, the court held that the opportunity to work overtime hours qualifies as an incident or advantage of employment protected by section 2021(b)(3) and ruled that a reservist may not be charged for overtime hours that he is forced to refuse because of his military training obligations.

The union contract that controlled overtime scheduling in *Lott, supra*, provided that an employee could refuse offered overtime, but he would be "charged" as if he had worked the scheduled overtime, even if his nonacceptance was due to reasons beyond his control, such as sickness or personal business. The plaintiff in *Lott* missed overtime opportunities on two occasions because of his required attendance at reserve meetings. He was charged for the overtime refused in accordance with the collective bargaining agreement. The *Lott* court rejected the employer's argument that since the contract was neutral on its face and was applied neutrally by the defendant, plaintiff was being treated equally with his co-workers as required by section 2021(b)(3). The court reasoned that to permit the application of the contract provision with equal force to all employees, including military reservists, "would permit a collective bargaining agreement to nullify the express protections of section [2021(b)(3)]." 395 F.Supp. at 869–870. Finding that the defendant's nonreservist employees were charged only if they "voluntarily" refused overtime, the district court held that the employer was required to accommodate the plaintiff by making missed overtime opportunities available to him.

Based on its reading of the *Lott, supra*, decision, the district court in the present case had "no trouble in holding that being scheduled for a full forty hour week . . . constitutes an incident or advantage of employment" and finding Sohio liable to the plaintiff "for those work dates when an accommodation should have been made." Explaining its holding, the court stated that section 2021(b)(3) "does not mandate that all employees be treated neutrally or equally. It requires positive action on the part of the employer, and gives to the employee with service obligations a right not given to employees with religious, health, or family obligations . . . ." We disagree.

■ We do not dispute the district court's holding that plaintiff had a right to

---

**2.** Formerly, 50 U.S.C. § 459(c)(3).

be scheduled to work forty hours a week and that this right is an incident or advantage of employment within the meaning of section 2021(b)(3). We reject, however, the district court's conclusion that section 2021(b)(3) imposes upon an employer the affirmative duty to accommodate employees with military reserve obligations by bestowing upon them rights and privileges not generally accorded to their fellow employees.

■ As a starting point in our analysis, we note that we are required "to construe the separate provisions of the Act as parts of an organic whole and give each as liberal a construction for the benefit of a veteran as a harmonious interplay of the separate provisions permit." *Fishgold v. Sullivan Drydock & Repair Corp.*, 328 U.S. 275, 285, 66 S.Ct. 1105, 1111, 90 L.Ed. 1230 (1946). Title 38 U.S.C. §§ 2024(d) and 2021(b)(3) are complementary and must be read together to understand the breadth of and limits to reemployment rights granted to reservists.

Section 2024(d) creates special rights for reservists. It compels employers to grant leaves of absence to employees who must attend reserve training. In addition, Section 2024(d) entitles a reservist who has been absent for inactive reserve training to benefits upon his return, such as wage rates and seniority, "which automatically would have accrued to him if he had remained in the continuous service of his employer." *Aiello v. Detroit Free Press, Inc.*, 570 F.2d 145, 148 (6th Cir. 1978). It does not entitle a reservist to benefits that are conditioned upon work requirements demanding actual performance on the job. *Id.* at 145. *See also, Foster v. Dravo Corp.*, 420 U.S. 92, 95 S.Ct. 879, 43 L.Ed.2d 44 (1975). Thus, it is clear that section 2024(d) does not require employers to pay absent reservists for hours not worked.

■ Section 2021(b)(3), on the other hand, does not enumerate the incidents or advantages of employment that it safeguards. The protection afforded by this section is purely derivative. It is intentionally framed in general terms to encompass the potentially limitless variation in benefits of employment that are conferred by an untold number and variety of business concerns. But, just as the property rights protected by the Due Process Clause of the Fourteenth Amendment can only be ascertained by looking outside the Amendment to state law, we read section 2021(b)(3) to protect only those employment benefits that a reservist can establish exist at his place of employment. In establishing their existence, incidents or advantages of employment must be ascertained by reference to employment rules or employer practices at the employer's business establishment.

In the case at bar, two incidents or advantages of employment were established: the right to be scheduled for a full forty-hour workweek and the right to exchange shifts with other employees if mutually agreeable to the employees involved and approved by the shift foreman. The record does not reveal whether the right to be scheduled for a forty-hour workweek was guaranteed by the collective bargaining agreement. The parties stipulated, however, that all employees, including the appellee, were customarily scheduled for that number of hours. We believe this to be sufficient to establish an employment practice as an incident or advantage of employment. The right to exchange shifts was provided for under the terms of the union contract then in effect. Unquestionably, this right qualifies for section 2021(b)(3) protection as well.

There was no unconditional right to work forty hours a week at defendant's refinery. The right to work forty hours was contingent upon the employees' presence and ability to perform at their regularly scheduled work periods, or, in the alternative, upon successfully arranging to change scheduled working time with other employees. Thus, unless the appellee was denied the right to be scheduled for forty hours a week or denied the right to exchange shifts "because of any obligation as a member of a reserve component of the Armed Forces," § 2021(b)(3), *supra*, no violation of section 2021(b)(3) occurred.

Section 2021(b)(3) provides that incidents or advantages of employment may not be "denied . . . because of any [military obligation]." This clause is subject to two interpretations in cases such as this. First, it can be read to mean that any time an employee's forced absence for reserve duty requires him to forgo a benefit that would have accrued to him only if he had been present for work, he has been "denied" an incident or advantage of employment "because of" his military obligation. This is the interpretation subscribed to by the district court in the instant case and the court in *Lott v. Goodyear Aerospace Corp., supra,* 395 F.Supp. 866. Under this view, employers have a duty to alter their employment rules, which may necessitate the fashioning of exclusive preferential rights, to accommodate reservist-employees' military training obligations. An employer must shoulder this burden even though the detriment to the reservist is a direct consequence of his military undertaking and not the result of intentional unequal treatment by his employer. We believe such an interpretation ignores the legislative history of the Act and requires a tortured reading of section 2021(b)(3).

The legislative history clearly states that section 2021(b)(3) is aimed at combatting discriminatory practices of employers. To this end, section 2021(b)(3) was enacted to ensure that reservists would be "entitled to the same treatment afforded their coworkers not having such military obligations." S.Rep.No.1477, *supra,* U.S.Code Cong. & Admin.News 1968, at 3421. We find no support in the legislative history of this section for the view that reservists are to receive preferential treatment; only that they must not be subjected to on-the-job bias by their employers because of their prospective military obligations.

In the absence of a clear and unambiguous statutory mandate to the contrary, we hold that section 2021(b)(3) merely requires that reservists be treated equally or neutrally with their fellow employees without military obligations. To meet this requirement, collective bargaining agreements and employment rules must be facially neutral and must be applied uniformly and equally to all employees.

The requirement of equal treatment was met in the present case. The parties agreed that appellee was regularly scheduled for forty-hour workweeks, as were his fellow employees. Further, Monroe was scheduled for weekend work in accordance with Sohio's established practice of rotating shifts to insure that all employees would work approximately an equal number of weekend days. Finally, he was treated the same as his coworkers with regard to the right to exchange shifts with other employees.

The condition precedent to plaintiff's right to work forty hours, as opposed to being scheduled to work forty hours, was never satisfied. The right to work forty hours was contingent on appellee's being present for work or arranging to switch shifts. On twenty-four occasions, appellant was unable to do either. His inability to exchange shifts was not due to unequal treatment by the appellant but attributable to the lack of cooperation on the part of his fellow employees. Nor were Monroe's absences on these occasions the result of disparate employment practices designed to deny appellee the right to be present for work because of his status as a member of the military reserve. Monroe was absent because he had to attend reserve training. Appellant was required to grant appellee a leave of absence on these days, and it did. It was not required to do more. Thus, the right to work forty hours during the weeks in question did not vest. Since there was no right to work forty hours during these weeks, there was no incident or advantage of employment protected by § 2021(b)(3) that was "denied . . . because of any obligation as a member of a reserve component of the Armed Forces." Sec. 2021(b)(3), *supra. West v. Safeway Stores, Inc.,* 609 F.2d 147 (5th Cir. 1980), involved a suit similar to the case at bar. There, the collective bargaining agreement guaranteed employees the right to work forty hours a week conditioned upon their presence at

work. Interpreting § 2021(b)(3) to require that such agreements be construed as if an absent employee is "constructively present" on those days he has reserve training, the Fifth Circuit held that the employer was required to accommodate the plaintiff by rescheduling him during those weeks when he was absent for reserve duty. We find nothing in the legislative history or the statute to support judicial invalidation of nondiscriminatory conditions precedent to employee benefits and adhere to our belief that conditional benefits are protected by § 2021(b)(3) only to the extent that the conditions have been actually satisfied.

We believe the result reached in *Carney v. Cummins Engine Co., Inc.*, 602 F.2d 763 (7th Cir. 1979), is consonant with the result here, though we choose not to adopt fully that court's rationale. In *Carney*, the Court of Appeals for the Seventh Circuit affirmed a district court judgment that a collective bargaining agreement suspending the right of reservists to be paid for accrued overtime when transferring departments was violative of section 2021(b)(3), where other employees were not denied this benefit upon transfer. We agree with the court that the collective bargaining agreement was no defense in that instance, since the contract provision at issue clearly discriminated against reservists. We decline to adopt the courts further reason for affirmance, however, insofar as the court appears to hold that the right to overtime opportunities is conferred by statute rather than by employment contract or practices.

For the foregoing reasons, we reverse the judgment of the district court and remand the case with instructions to dismiss the complaint.

### ORDER

Plaintiff-appellee's petition for rehearing having come on to be considered and of the judges of this Court who are in regular active service less than a majority having favored ordering consideration en banc, the petition has been referred to the panel which heard the appeal, and it further appearing that the petition for rehearing is without merit.