Roger D. MONROE, Plaintiff,

v.

The STANDARD OIL COMPANY, Defendant.

Civ. No. C 76–71.

United States District Court, N. D. Ohio, W. D.

Feb. 22, 1978.

---

termination of this cause by stipulating a series of facts.

## I. FACTUAL BACKGROUND

At all times herein, plaintiff is a member of a unit of the Army Reserve. Plaintiff is required to train with his unit one weekend per month, and must spend two weeks per year training, usually in the summer. Stipulation of Fact ¶ 22. In addition to his military service, plaintiff is a full time employee at the defendant's refinery in Lima, Ohio. Customarily, plaintiff works a full forty hour week except when he is absent from his civilian employment for personal reasons, vacation, sick leave, or military leave. Stipulation of Fact ¶¶ 3–5.

The refinery at Lima operates on a twenty-four hour per day schedule seven days per week. Each day is divided into three working shifts. Scheduling of employees is done in such a way that an employee such as plaintiff works various days of the week, although generally for five days in succession. On a given week, an employee might work Monday through Friday, while at other times he might work Tuesday through Saturday, Wednesday through Sunday, and so on. Thus, the impact of such a scheduling system is to give the employee forty hours of regularly scheduled work while at the same time requiring him to work certain weekends and correspondingly to take his days off during the week.

At all times herein, employment at the Lima refinery has been governed by a collective bargaining agreement between the defendant and the Oil, Chemical and Atomic Workers International Union. Stipulation of Fact 6. Article V, ¶ 23 of that agreement provides:

> Employees on shift may, by mutual consent and with the consent of their foreman, change shifts provided such change does not require the payment of overtime or premium pay. Where such changes require the payment of overtime or premium pay, such changes may be made only where there exists a critical need of such changes proven to the satisfaction of the Plant Manager. Stipulation of Fact ¶ 7.

Patrick J. Foley, Asst. U. S. Atty., Toledo, Ohio, Gregory B. Taylor, U. S. Dept. of Labor, Cleveland, Ohio, for plaintiff.

John Garland, Cleveland, Ohio, for defendant.

## OPINION AND ORDER

DON J. YOUNG, District Judge.

This cause came to be heard upon the motion of defendant for summary judgment and upon cross-motion of plaintiff for summary judgment. This Court is presented with an issue of apparent near first impression regarding the relationship of a member of the Army Reserve to his civilian employer. The parties have aided the de-

It is further stipulated between the parties that plaintiff was treated no differently in terms of work scheduling than other employees. Stipulation of Fact ¶ 11. Plaintiff, thus, had the right to change shifts if he found another employee willing to change. Stipulation of Fact ¶ 11. In the event a particular employee is absent from his work assignment, defendant's practice is to bring in a replacement, and during 1975 and 1976, there were occasions when such extra employees were needed. Stipulation of Fact ¶¶ 20–21.

On four different occasions in 1975 and 1976, when plaintiff was scheduled to work at the same time as he was required to attend military reserve training, he was able to exchange shifts with other employees so that he retained a full forty hour work-week. Stipulation of Fact ¶ 12. On the following days, however, plaintiff was required to attend military reserve training and was not able to exchange shifts and for that reason was absent from his assigned refinery position:

1975: May 10, 11
June 14, 15
August 1
September 6
October 3, 4
November 7
December 7
1976: January 9, 10, 11, 17, 18, 23, 24, 25
February 7, 8
March 6
June 6
July 17, 18

Stipulation of Fact ¶ 13. Thus, by missing 24 days of work over the two year period, plaintiff has missed a total of 192 hours of work for which he was not compensated. Stipulation of Fact ¶ 15. Plaintiff here is seeking damages from the defendant in the amount of wages which would have been earned on the missed days. Plaintiff's hourly wage rate for the time missed was $5.66. Stipulation of Fact ¶ 16.

Defendant's position is that it is not required to schedule the plaintiff for additional hours of work or to pay him for hours not worked. In other words, defendant claims that if it owed any obligation to plaintiff, that obligation was satisfied when the defendant scheduled plaintiff to work and when plaintiff was able to exchange shifts pursuant to the collective bargaining agreement.

## II. STATUTORY BACKGROUND

Title 38, U.S.C. § 2021(b)(3) [1] provides:

Any person who holds a position in Clause (A) or (B) of subsection (a) of this section (including a person in the employ of a private employer) shall not be denied retention in employment or any promotion or other incident or advantage of employment because of any obligation as a member of a Reserve component of the Armed Forces.

The defendant here is an employer within the meaning of the statute. The issue presented to the Court is whether plaintiff was denied an incident or advantage of employment when he was unable to exchange shifts with another employee and therefore was unable to work a full forty hour week as employees without military obligations would.

The legislative history of the statute was examined by the United States District Court for the Northern District of Ohio, Eastern Division, when it was called upon to decide a similar issue. *See, Lott v. Goodyear Aerospace Corporation,* 395 F.Supp. 866, 868 (N.D. Ohio 1975). The intent and purpose of the bill is "to prevent Reservists and National Guardsmen not on active duty who must attend weekly drills or summer training from being discriminated against in employment because of their Reserve membership . . . ." S.Rep.No.1477, 90th Cong., 2d Sess. at 1–2, U.S.Code Cong. & Admin.News, p. 3421 (1968). The Senate Report states:

It (the bill) provides that these reservists will be entitled to the same treatment afforded their coworkers not having such military obligations by requiring that em-

---

**1.** What is now 38 U.S.C. § 2021(b)(3) was formerly 50 U.S.C.App. § 459(c)(3). The recodification took place on December 3, 1974, pursuant to P.L. 93–508.

ployees with Reserve obligations "shall not be denied retention in employment or other incident or advantage of employment because of any obligation as a member of a Reserve component of the Armed Forces of the United States." S.Rep.No. 1477, 90th Cong., 2d Sess. at 2, U.S.Code Cong. & Admin.News, p. 3421 (1968).

*Lott v. Goodyear Aerospace Corporation,* supra, is one of the few authorities cited by the parties. In *Lott,* a reservist brought an action against his employer which sought to challenge the employer's practice of "marking up" an employee for overtime because the employee could not take advantage of the overtime due to military obligations. Although overtime was voluntary, the overtime scheduling system was designed in such a way that overtime would be equalized as nearly as possible between employees. 395 F.Supp. at 867. On several occasions military reserve obligations prevented plaintiff from working overtime as he had been scheduled. By "marking up" plaintiff for overtime, the company counted plaintiff as having worked those hours for scheduling purposes although he was not paid for them. 395 F.Supp. at 868. Further overtime apparently was scheduled for the plaintiff as if he had worked the originally scheduled overtime hours. The District Court in *Lott* held that the employer's practices violated the act.

Plaintiff has also directed this Court to the unreported case of *Hanning v. Kaiser Aluminum,* No. 76–547 (E.D.La. June 29, 1977). There, plaintiffs, in addition to belonging to a reserve Coast Guard unit, worked as welders for defendant. Plaintiffs were granted leaves of absence to attend the yearly two-week training period. The July 4th holiday fell during the two-week period and the company refused to pay each plaintiff for that holiday because neither had worked during the payroll week immediately prior to the holiday as required by the applicable collective bargaining agreement. The Court there held that the employees were entitled to the holiday pay and that the employees would be treated as if they had been at work during the week prior to the holiday.

Both *Lott* and *Hanning* represent at least slightly distinguishable situations from that presented in the instant action. In *Hanning,* the company was obligated by agreement to pay plaintiffs had they not been at reserve training. In *Lott,* the "marking up" of employees was at issue and not actual presence on the job. In the instant action, we are not concerned with holiday pay or "marking up" for overtime. Rather, we are concerned directly with the presence of the employee on the job, and in effect, the degree to which the employer must manipulate his work schedule to allow for the presence of his guardsmen-employees on the job. Thus it is clear that the distinctions are without difference so far as the basic issue in this case is concerned.

Normally, employees at the defendant's refinery work a forty hour week. Regardless of the particular days of the week or shifts which an employee works, employees can be sure that they will be scheduled for a full forty hours. Moreover, employees such as plaintiff can expect to work various days of the week depending on the work schedule as outlined above. In light of *Lott*'s holding that "marking up" for overtime benefits constitutes an incident or advantage of employment, it would follow that being scheduled to work a full forty hour week constitutes an incident or advantage of employment. Thus, this Court has no trouble here holding that being scheduled for a full forty hour week at the defendant's refinery constitutes an incident or advantage of employment for the plaintiff, and finding that the defendant is liable to plaintiff for those work dates when an accommodation should have been made.

The defendant attempts to analogize the statute here involved with the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.,* and the EEOC Guidelines promulgated pursuant to the statute requiring only that employers make "reasonable accommodation" to the needs of employees to be absent for religious purposes. Defendant contends that the case law developed under these provisions only

requires the employer's practices to be neutral, and equally applicable to all employees.

This analogy fails, because the statute here in question forbids denying those in military service incidents or advantages of employment because of their obligations of service. This does not mandate that all employees be treated neutrally or equally. It requires positive action on the part of the employer, and gives to the employee with service obligations a right not given to employees with religious, health, or family obligations, which while they may be of equal concern to the employee, have no relation to the necessity of the Government to defend itself against enemy aggression. The very existence of the nation depends upon its ability to have a military force trained and skilled in the complex technology of modern warfare. Those who accept the obligation of military service are entitled to more than neutral treatment, or to be treated no differently than those who do not accept this obligation.

Nor is the Court persuaded by the argument that since the statute has not been construed to require the employer to pay wages to employees during their absence for extended periods of military service, such as the annual two week reserve training period, it should not be required to pay for the one or two day absences its employment scheduling practices forced upon the plaintiff. The difference between the two situations is not merely quantitative, but is qualitative.

Much argument is devoted to the complexities and burdens that might arise if the defendant were required to alter its scheduling practice to avoid the losses those practices have inflicted upon the plaintiff. Basically, this is purely a money issue, which would be difficult, if not impossible, for the Court to determine, but very simple for the defendant to resolve. If it would cost the defendant more to change its scheduling practices than it would to pay the plaintiff for the time he annually loses because of these practices, the defendant can choose the less expensive alternative. Neither individuals nor corporations can expect to live in a free nation without making some cash payments for the privilege.

THEREFORE, for the reasons stated, good cause appearing therefor, it is

ORDERED that the cross-motion of plaintiff for summary judgment be, and it hereby is, sustained; and it is

FURTHER ORDERED that the motion of defendant for summary judgment be, and it hereby is, overruled; and it is

FURTHER ORDERED that the clerk enter judgment in favor of plaintiff against the defendant in the sum of One Thousand Eighty-Six Dollars and Seventy-Two Cents ($1,086.72) for wages lost as a result of his serving his military obligation.

IT IS SO ORDERED.