**Gary E. BREEDING, Plaintiff,**

v.

**TRW, INC., ROSS GEAR DIVISION, Defendant.**

**No. 78–3444.**

United States District Court, M. D. Tennessee, Nashville Division.

Sept. 28, 1979.

Irvin H. Kilcrease, Jr., Asst. U. S. Atty., Nashville, Tenn., for plaintiff.

William A. Simon, Jr., Cleveland, Ohio, Stafford McNamee, Jr., Nashville, Tenn., for defendant.

## MEMORANDUM

WISEMAN, District Judge.

Plaintiff, Gary E. Breeding, brings this action against defendant, TRW, Inc., Ross Gear Division, for lost wages and other benefits claiming that the defendant has violated the Veterans' Reemployment Rights Act[1] (VRR Act), 38 U.S.C. §§ 2021, *et seq.* The United States Attorney is prosecuting the action on behalf of the plaintiff, under the authority of 38 U.S.C. § 2022, the same section conferring jurisdiction on this Court. The matter is before this Court on cross motions for summary judgment.

---

1. The provisions of the VRR Act were previously found in 50 U.S.C. App. § 459. The reemployment provisions of 50 U.S.C. App. § 459 were recodified in 1974 as 38 U.S.C. §§ 2021 *et seq.* with non-substantial wording changes. Thus, the judicial precedents developed under them are largely interchangeable.

The plaintiff began work as a full time employee for the defendant on December 16, 1969. As a member of the Tennessee Army National Guard (National Guard), plaintiff was engaged in inactive duty training between February 1, 1972, and March 18, 1977, which consisted of attendance at weekend National Guard drills one weekend per month and attendance at a two-week summer training camp on four occasions. The collective bargaining agreement executed between plaintiff's bargaining representative, the United Automobile, Aerospace and Agricultural Implement Workers of America (Union), and the defendant provides for an overtime equalization policy among departments by shift and job classification. Under this policy if any employee does not accept overtime work offered to him or her, his or her employment record is charged for the hours nevertheless. On seventeen occasions between February 1, 1972, and March 18, 1977, the plaintiff's weekend National Guard duty prevented him from accepting the overtime work offered to him. The defendant charged or credited the plaintiff's overtime equalization record as if the plaintiff had worked the overtime pursuant to the policy of the collective bargaining agreement referred to above. The plaintiff contends that the defendant violated section 2021(b)(3) of the VRR Act by refusing to allow him to make up the overtime opportunities missed while serving on military duty.

PLAINTIFF'S CONTENTION THAT THE LEGISLATIVE DEVELOPMENT OF THE RIGHTS OF RESERVISTS AND NATIONAL GUARDSMEN UNDER THE VRR ACT CLEARLY DEMONSTRATES THAT PLAINTIFF'S CLAIM IS GOVERNED BY 38 U.S.C. § 2021(b)(3).

The defendant asserts that the reemployment rights of a National Guardsman such as the plaintiff who performs inactive training duty on weekends are governed exclusively by 38 U.S.C. § 2024(d). This statute requires an employer to grant, upon request, a leave of absence to any employee to perform active or inactive duty for training. Upon release from such training the employee must be allowed to return to his former job with "such seniority, status, pay, and vacation as such employee would have had if such employee had not been absent for such purposes." The defendant maintains that it has complied with these statutory mandates.

The plaintiff, on the other hand, argues that 38 U.S.C. § 2021(b)(3) was enacted to supplement the reemployment rights provided to National Guardsmen and reservists in section 2024(d).[2] In support of this argument the plaintiff refers to the legislative history behind 38 U.S.C. § 2024(d) in addition to the legislative background of section 2021(b)(3). The senate report that accompanied the passage of section 2024(d) states that one of the purposes of this provision was to afford reemployment protection for National Guardsmen and reservists absent for employment for only short periods of time such as two-hour drills, weekend drills, two-week annual encampments, and special training or instruction periods that may last for thirty, sixty or ninety days. S.Rep.No. 1672, 86th Cong., 2nd Sess. (1960), *reprinted in* 1960 U.S.Code Cong. & Admin.News, 3077, 3078. The Congress recognized that it would be unrealistic to afford these employees the same thirty-day period in which to assert leave of absence rights as was given to reservists and National Guardsmen performing an initial period of active duty for training of three to six months duration. Therefore, section 2024(d) was enacted to insure that an employee performing such short term duty was permitted a leave of absence upon reinstated with the same seniority, status, pay, and vacation rights.

The plaintiff contends that section 2021(b)(3) was subsequently enacted to expand the reemployment rights of section

---

**2.** Section 2021(b)(3) states that "[a]ny person who holds a position described in clause (A) or (B) of subsection (a) of this section shall not be denied retention in employment or any promotion or other incident or advantage of employment because of any obligation as a member of a Reserve component of the Armed Forces."

2024(d) which, as seen in Senate Report No. 1672, *supra*, was concerned basically with employee leave of absence and reinstatement rights. Section 2021(b)(3), plaintiff asserts, was concerned with employment practices which caused an economic disadvantage to reservists or National Guardsmen in their daily worklife because of the conflicts created by their frequent and brief absences from work necessitated by their reserve or guard duty. Support for this contention is found in Senate Report No. 1477 which specifically states that one of the purposes of the 1968 bill was to prevent reservists and National Guardsmen not on active duty who must attend weekly drills or summer training from being discriminated against in employment because of their Reserve membership.

Employment practices that discriminate against employees with Reserve obligations have become an increasing problem in recent years. Some of these employees have been denied promotions because they must attend weekly drills or summer training and others have been discharged because of these obligations. Section 1 of the bill is intended to protect members of the Reserve components of the Armed Forces from such practices. It provides that these reservists will be entitled to the same treatment afforded their coworkers not having such military obligations by requiring that employees with Reserve obligations 'shall not be denied retention in employment or other incident or advantage of employment because of any obligation as a member of a Reserve component of the Armed Forces of the United States.' Section 2 of the bill provides that the prohibition against discrimination toward employees with Reserve obligations would be enforcible in the U.S. district courts under section 9(g) of the Military Selective Service Act of 1967.

S.Rep.No.1477, 90th Cong. 2nd Sess. (1968), *reprinted in* 1968 U.S.Code Cong. & Admin. News, pp. 3421, 3422.

■ This Court must review the foregoing legislative history in light of the mandate "to construe the separate provisions of the Act (the Selective Training and Service Act of 1940) as parts of an organic whole and give each as liberal a construction for the benefit of the veteran as a harmonious interplay of the separate provisions permits." *Fishgold v. Sullivan Drydock and Repair Corp.*, 328 U.S. 275, 285, 66 S.Ct. 1105, 1111, 90 L.Ed. 1230, 1240 (1946); *Alabama Power Co. v. Davis*, 431 U.S. 581, 584, 97 S.Ct. 2002, 2005, 52 L.Ed. 595, 599; *Hanna v. American Motors Corp.*, 557 F.2d 118, 120 (7th Cir. 1977). This Court holds, therefore, that a harmonious interplay of section 2024(d) and section 2021(b)(3) supports plaintiff's position that each section has its own separate and distinct purpose and must be considered as complementary rather than mutually exclusive enactments favoring the plaintiff.

PLAINTIFF'S CONTENTION THAT THE RIGHT TO MAKE UP OVERTIME WORK MISSED BECAUSE OF A RESERVE OR NATIONAL GUARD OBLIGATION IS AN INCIDENT OR ADVANTAGE OF EMPLOYMENT UNDER SECTION 2021(b)(3).

Section 2021(b)(3) separately protects reservists and Guardsmen from denial of any other "incident or advantage of employment." The plaintiff insists that the opportunity to make up overtime work is an important economic advantage of an employee's job and thus can be characterized as such an incident or advantage. This terminology is not defined in the Act or its legislative history, although as previously stated, the legislative purpose behind this provision was to protect workers from being discriminated against in their employment because of their military obligations. Several recent cases have dealt with this definitional question and have ruled that the Act requires positive action by employers in protecting certain benefits deemed to be "incidents or advantages of employment."

In a factual situation that closely parallels that in the instant case, the court in *Lott v. Goodyear Aerospace Corp.*, 395 F.Supp. 866 (N.D.Ohio 1975), held that the

opportunity to work overtime hours easily qualifies as one of the protections guaranteed to a reservist by section 2021(b)(3). The defendant employer in *Lott*, as does the employer in the present case, argued that the plaintiff was being treated equally with his coworkers since the overtime work policy provided in its collective bargaining agreement with the employees' union was applied neutrally. As in the case at bar, all overtime hours offered to employees in *Lott* but not accepted even for reasons beyond the employee's control, such as sickness or personal business, were charged to the worker's overtime equalization record. The court rejected the employer's argument, reasoning that to apply such a policy to military reservists would allow a collective bargaining agreement to nullify the protections of section 2021(b)(3).[3] Instead the court held that that section entitled a reservist prevented from working overtime because of his guard duty to be equated with a person able to work overtime concluding that, "[s]ince the latter person draws overtime pay, unless he voluntarily chooses not to exercise the opportunity, the reservist should not be marked up for overtime that he could not take advantage of because of his military duty." *Id.* at 870.

Another case, *Carney v. Cummins Engine Co.*, 99 LRRM 2683 (S.D.Ind. Aug. 25, 1978) involved the same overtime equalization policy issue as in *Lott* and the present case. There the court in response to defendant's contention that the plaintiff was seeking preferential treatment by demanding the right to make up missed overtime, stated that the plaintiff did not voluntarily decline the opportunity to work overtime and indeed would have worked overtime but for his absence due to his military duty. The employer was thus ordered to permit the reservist to make up missed overtime opportunities or pay him compensation in lieu thereof.

In a factual situation distinguishable from *Lott* and *Carney* but without differ-

ence so far as the basic issue in that case was involved, the court in *Monroe v. Standard Oil Co.*, 446 F.Supp. 616 (N.D.Ohio 1978), determined that the right to work a full forty-hour week in those weeks when the plaintiff's weekend reserve drill fell on a scheduled work day was a protected "incident or advantage of employment." In interpreting section 2021(b)(3), the *Monroe* court expressed what the *Lott* and *Carney* courts had done by stating that:

> the statute here in question forbids denying those in military service incidents or advantages of employment because of their obligations of service. This does not mandate that all employees be treated neutrally or equally. *It requires positive action on the part of the employer, and gives to the employee with service obligations a right not given to employees with religious, health, or family obligations, which while they may be of equal concern to the employee, have no relation to the necessity of the Government to defend itself against enemy aggression.* The very existence of the nation depends upon its ability to have a military force trained and skilled in the complex technology of modern warfare. *Those who accept the obligation of military service are entitled to more than neutral treatment, or to be treated no differently than those who do not accept this obligation.*

*Id.* at 620 (emphasis supplied).

Accordingly, the employer was ordered to change its scheduling practices or pay the plaintiff for the time he loses because of those practices.

The most recent case cited by the plaintiff in support of the position that the right to make up overtime work is an "incident or advantage of employment" is *Kidder v. Eastern Air Lines, Inc.*, 469 F.Supp. 1060 (S.D.Fla.1978). In *Kidder* the defendant employer refused to pay the plaintiff employee for the Memorial Day holiday at which time the plaintiff was on active duty

---

**3.** The Supreme Court in *Fishgold, supra*, stated that "no practice of employers or agreements between employers and unions can cut down the service adjustment benefits which Congress has secured the veteran under the Act." *Id.* 328 U.S. at 285, 66 S.Ct. at 1111, 90 L.Ed. at 1240.

for training with his National Guard unit. This denial was in accordance with a provision of the collective bargaining agreement between the employee's union and the defendant which barred all employees absent from work on a leave of absence from collecting holiday pay. The court in ruling in favor of the employee stated that it supported the holdings of prior decisions which have held that "to the extent that a claimed benefit of employment is an 'incident or advantage of employment' a reservist or National Guardsman must be treated as if he had remained at work and must be accorded that benefit if it is based on mere presence at work." *Id.* at 1066. In view of this statement, the court concluded that the employee's right to holiday pay was such an "incident or advantage of employment" and that "the defendant's argument that a reservist must be treated like any other employee on a non-military leave of absence is incorrect as a matter of law." *Id.* at 1067.

This Court believes, however, that such rights as the right to work overtime, the right to work a forty-hour week, or the right to paid vacations are contingent benefits of employment which must be earned and should be distinguished from employment benefits based on mere presence at work. Exemplifying this distinction is a series of cases involving perquisites of seniority and vacation benefits. The plaintiffs in these decisions were all returning veterans rather than reservists or Guardsmen seeking protection of rights provided under the subsections of 38 U.S.C. § 2021 preceding section 2021(b)(3). These sections speak in terms of restoring the returning veteran to the same employment status which he would have enjoyed if he had continued in his work rather than entering the Armed Forces. Although the following

cases do not deal with "incidents or advantages of employment" provided to reservists or Guardsmen under section 2021(b)(3), an analogy can be drawn between the reasoning used by the courts in determining the respective rights of each type of claimant.

In *Alabama Power Co. v. Davis,* 431 U.S. 581, 97 S.Ct. 2002, 52 L.Ed.2d 595 (1977), the Supreme Court determined that the employee was entitled to credit toward his pension under his employer's pension plan for the time of his military service as an incident of seniority notwithstanding that the same credit was not given to employees on a non-military leave of absence from the company without regular pay. In making this determination the Court examined whether the pension benefit would have accrued with reasonable certainty, *McKinney v. Missouri-Kan.-Tex. R. Co.,* 357 U.S. 265, 78 S.Ct. 1222, 2 L.Ed.2d 1305 (1958); *Tilton v. Missouri Pac. R. Co.,* 376 U.S. 169, 84 S.Ct. 595, 11 L.Ed.2d 590 (1964), had the veteran been continuously employed by his employer as well as the nature of the benefit. According to this analysis, the Court found that the employee's work history demonstrated that but for his military service, he would almost certainly have accumulated accredited service[4] and that pension payments are predominantly rewards for continuous employment with the same employer rather than compensation for service rendered.

In *Adams v. GMC,* 525 F.2d 161 (6th Cir. 1975), the veterans claimed that their employer had refused to count their time in military service toward the achievement of "Employee-in-Training-Seniority" status which the employees were in the process of attaining before leaving employment for military service.[5] This status would afford

---

**4.** This finding is in accord with what has been called "the escalator principle" first announced in *Fishgold v. Sullivan Drydock and Repair Corp., supra.* This principle states that under the Military Selective Service Act the veteran "does not step back on the seniority escalator at the point he stepped off. He steps back on at the precise point he would have occupied had he kept his position continuously during

the war." *Id.* 328 U.S. at 284–85, 66 S.Ct. at 1111, 90 L.Ed. at 1240.

**5.** Each of the employees was participating in an eight-year program leading to journeyman status in various skilled trades classifications. This program provided that upon completion of at least four years in an "Employee-in-Training" position, a worker could advance to an "Employee-in-Training-Seniority" status until

the veterans the benefit of layoff protection. The Sixth Circuit applied the escalator principle of *Fishgold v. Sullivan Drydock and Repair Corp.*, 328 U.S. 275, 66 S.Ct. 1105, 90 L.Ed. 1230 (1946), and determined that actual performance on the job was not a condition or contingency for moving to such status. The employees were, therefore, entitled to the added layoff protection as an incident of seniority. The court stated, however, that the employees' claims would be denied had they claimed that their time in military service should be counted toward the eight years of actual work required to qualify for the superior position.

Lastly in *Barrett v. Grand Trunk W. R. Co.*, 581 F.2d 132 (7th Cir. 1978); *cert. denied*, 440 U.S. 946, 99 S.Ct. 1423, 59 L.Ed.2d 634 (1979), the employee claimed that because of his absence from work necessitated by his military duty, he was denied a job transfer to a preferred employment status. Addressing this issue, the court asserted that "[j]ust as an employee who serves in the military is not to be disadvantaged because of his absence, the Act was not intended to operate to favor the veteran 'as against his fellows.' *Aeronautical Industrial District Lodge 727 v. Campbell*, 337 U.S. 521, 526, 69 S.Ct. 1287, 93 L.Ed. 1513 (1949); *accord, Fishgold, supra*, 328 U.S. at 286, 66 S.Ct. 1105." *Id.* at 135. However, the court concluded that the plaintiff in the case before it would have enjoyed to a reasonable certainty the new position had he been continuously employed. *McKinney v. Missouri-Kan.-Tex. R. Co., supra.*

In contrast to noncontingent employment benefits or entitlements protected under the VRR Act, courts have declined to grant job benefits conditioned on the fulfillment of work requirements. In *Foster v. Dravo Corp.*, 420 U.S. 92, 95 S.Ct. 879, 43 L.Ed.2d 44 (1975), the Supreme Court addressed the question of whether the VRR Act entitles a returning veteran to vacation benefits when because of his departure for military service, the veteran has failed to satisfy a bona fide substantial work requirement contained in a collective bargaining agreement on which the vacation benefits were conditioned. Concluding that the vacation benefits were a form of deferred compensation for work performed, the Court stated that there was nothing in the statute that justified the entitlement of full or pro rata vacation benefits. Furthermore, the Court stated that "the statute should be applied only where it clearly appears that vacations were intended to accrue automatically as a function of continued association with the company." *Id.* at 101, 95 S.Ct. at 884, 43 L.Ed.2d at 53.

A similar type of action was brought by employees seeking to recover vacation pay allegedly due them while they were on leave of absence from employment because of military service in *Aiello v. Detroit Free Press, Inc.*, 570 F.2d 145 (6th Cir. 1978). The court asserted that the rights of a returning veteran to benefits are determined by the following standard, "He is entitled to benefits which automatically would have accrued to him if he had remained in the continuous service of his employer. He is not entitled to benefits which require more than continued status, such as a work requirement demanding actual performance on the job." *Id.* at 148. According to this standard the court ruled against the employees concluding that vacation pay benefits were conditioned upon a work requirement requiring actual performance on the job.

Finally in *LiPani v. Bohack Corp.*, 546 F.2d 487 (2d Cir. 1976), the employer refused to credit the employees' time spent in military service toward computation of vacation and sick leave benefits. These benefits were deemed by the court to be forms of deferred compensation earned by work and not gained automatically by continued association with the employer. Holding in favor of the employer the court stated that the Act was not intended to place returning servicemen in a better position than other

classified as a journeyman. The change of an employee's status from "Employee-in-Training" to "Employee-in-Training-Seniority" did not involve any change in duties or a wage increase, only the additional protection from layoff at the time of this change.

employees but requires only that an employer give the veterans the same treatment he would give to an employee on a leave of absence or a furlough.

■ Using the principles applied in the above cases dealing with the rights of returning veterans in examining the nature of the benefit in the present case, this Court holds that the right to work overtime and collect overtime premium pay can be characterized as an entitlement contingent upon the plaintiff's fulfilling a bona fide work requirement rather than a right which vests in the plaintiff by his continued association with the defendant. This conclusion is premised on the fact that the overtime equalization policy provided in the collective bargaining agreement in the present case does not absolutely guarantee that the opportunity to work overtime and to collect overtime compensation will remain available to the employee but instead conditions this opportunity on the employee's acceptance of the overtime work opportunity at the time it is offered. This opportunity is foreclosed to all employees who voluntarily or involuntarily refuse such work.[6] There is no provision in the collective bargaining agreement which prevents an employee's overtime equalization record from being charged because the employee was unable to accept the offer. To provide such exception to the plaintiff whose attendance at Guard drills allegedly causes him to decline the overtime work offered to him would be to afford him preferential treatment contrary to the legislative purpose of insuring that employees having military obligations be given equal treatment with their co-workers.[7]

This conclusion conflicts with *Monroe v. Standard Oil, supra,* and other cases which interpret section 2021(b)(3) as requiring affirmative action on the part of employers to insure that reservists and Guardsmen are given rights not given to non-military employees. This Court, however, finds that this interpretation of section 2021(b)(3) goes beyond the intended purpose of that section which, as indicated from its legislative history examined previously, was enacted to protect existing rights of reservists and Guardsmen from discrimination in employment due to their military obligations.

*West v. Safeway,* 99 LRRM 3390 (N.D. Tex. Sept. 20, 1978), a case factually akin to *Monroe,* supports this reasoning. The collective bargaining agreement in *West* provided that full-time employees were guaranteed forty-hour work weeks unless such employee was absent or tardy according to his work schedule. The plaintiff in *West* was absent during certain scheduled weeks due to his attendance at weekend National Guard meetings and was, therefore, only able to work thirty-two hours during such weeks. As in *Monroe,* the employee in *West* contended that his employer was bound under section 2021(b)(3) to alter the employee's work schedule in order to insure that his National Guard duty did not prevent him from working a forty-hour week. The court interpreted the collective bargaining agreement as providing an absolute guarantee only if the employee was not absent or tardy. Plaintiff's absence for Guard duty was deemed to break this guarantee. The court rejected the plaintiff's contention that a forty-hour week was an "incident or advantage of employment"

---

**6.** Art. VII, § 5 of the 1974–1977 collective bargaining agreement between the defendant and the union qualifies this statement by providing for the following three exceptions:

3. An employee notified of daily overtime on the day the overtime is to be performed will not be charged or aggrieved if he refuses the overtime work.

4. An employee who is not at work on the day the overtime work is assigned, who otherwise would have been scheduled to work, will not be charged for the overtime hours he would have been paid.

·     ·     ·     ·     ·

9. An employee who is on vacation and would normally have been scheduled for overtime work on his job classification will not be charged for such overtime.

**7.** Neither is there a reasonable certainty that had there been no conflict between plaintiff's Guard duty and his scheduled opportunity to work overtime that he would have accepted such opportunity since on 36 occasions between February 1, 1972, and March 18, 1977, when the plaintiff was not scheduled for and did not attend National Guard drill, he refused to accept the overtime work offered to him by the defendant.

within the meaning of section 2021(b)(3) stating that the statute does not create new privileges or grant special treatment in favor of Reserve members but was "simply intended to protect existing employee rights from being denied because of military obligations." *Id.* at 3392. Accordingly, the court found as a matter of law that the defendant's failure to provide forty hours of work per week on days other than Saturdays or Sundays during weeks when plaintiff attended National Guard drills was not a denial of any protected "incident or advantage of employment" because of plaintiff's military obligations. Thus, the court held that the employer had not violated section 2021(b)(3).

The prevention of discrimination against Guardsmen, rather than providing for discrimination in their favor, is the end sought to be achieved by this legislation. Failure by the defendant to allow the plaintiff to make up overtime work opportunities which he missed while attending National Guard drills did not constitute a denial of an "incident or advantage of employment" because of the plaintiff's military duty. Therefore, the defendant has not violated section 2021(b)(3), and the motion for summary judgment by defendant is granted.