Lee S. RUMSEY, Douglas Digerlando, Michael Rhodes, and Thomas Graves, individually and as representatives of all persons similarly situated, Plaintiffs–Appellees–Cross–Appellants,

v.

NEW YORK STATE DEPARTMENT OF CORRECTIONAL SERVICES and Thomas Coughlin, as Commissioner of the New York State Department of Correctional Services, Defendants–Appellants–Cross–Appellees.

Nos. 241, 528, Nos. 93–7273, 93–7333.

United States Court of Appeals, Second Circuit.

Argued Sept. 27, 1993.

Decided March 14, 1994.

John McConnell, Asst. Atty. Gen., Albany, NY (Robert Abrams, Atty. Gen., Peter H. Schiff, Deputy Sol. Gen., of counsel), for defendants-appellants-cross-appellees.

Thomas J. Forrest, Albany, NY (James J. Seaman, Rowley, Forrest, O'Donnell & Hite,

P.C., of counsel), for plaintiffs-appellees-cross-appellants.

Before: CARDAMONE, McLAUGHLIN and LAY,[*] Circuit Judges.

CARDAMONE, Circuit Judge:

On September 15, 1982 Lee S. Rumsey, individually and as a member of a class of nearly 1000 New York State correction officers, sergeants and lieutenants employed by the Department of Correctional Services, all of whom are also members of the New York National Guard or a reservist branch of the U.S. Armed Forces, commenced a class action in the United States District Court for the Northern District of New York (Cholakis, J.). The action alleged that the defendants, New York State Department of Correctional Services (Department) and Thomas Coughlin III, Commissioner of the Department, violated the Veterans' Reemployment Rights Act, (Veterans' Act), 38 U.S.C. §§ 2021(b)(3) and 2024(d) (1988) (renumbered 38 U.S.C. §§ 4301(b)(3) and 4304(d)[1]) and New York Military Law § 242(4) (McKinney 1990). In addition, the complaint asserted that the class members were denied the equal protection of the law, violating 42 U.S.C. § 1983 (1988).

The action was prompted by defendants' promulgation of Directive No. 2212, which required correction officers to change their pass days (days off) to correspond with their military reservist obligations. Plaintiffs sought injunctive relief, compensation claimed to have been lost as a result of the rescheduled pass days, and attorney's fees pursuant to 42 U.S.C. § 1988 (Supp. III 1991). Just as the poet who wrote: "Sewing at once, with a double thread, A Shroud as well as a Shirt," Thomas Hood, *The Song of the Shirt,* in 1 *The Poetical Works of Thomas Hood* 193, 194 (Little, Brown & Co. 1864), the trial judge thought the Department's promulgation of Directive No. 2212 had twin consequences, that is to say, it at once violated both a collective bargaining agreement the Department had with its National Guard/reservist employees *and* § 4301(b)(3) of the Veterans' Act. We cannot agree that it had such double consequences. Before explaining our reasons for differing from the trial court, we set forth the somewhat complex circumstances that prompted this litigation.

## BACKGROUND

Plaintiffs are all members of either the Security Services Unit, representing correction officers and sergeants, or the Security Supervisors Unit, representing correction lieutenants. The bargaining representative for both of these units is the New York State Inspection Security and Law Enforcement Employees, District Council 82, AFSCME, AFL–CIO (Council 82). Collective bargaining agreements covering these state employees have been in force since 1970, involving several labor agreements over the time span alleged in the complaint. Because all pertinent provisions in these agreements are the same and apply to both employee bargaining units, references in what follows will be to the provisions of the 1982–85 Security Services Unit collective bargaining agreement, which went into effect on April 1, 1982.

Pursuant to that agreement, job vacancies in state correctional facilities are posted as they occur, and interested employees may bid for them. The postings indicate the work location, that is, at what specific correctional institution there is an opening, and include the hours and days the shift is to be worked, and what days are off. Assignments to these vacancies are awarded on a seniority basis. The labor agreement states that "[r]egularly scheduled days off shall not be changed for the purpose of avoiding the payment of overtime." The Department contends that this provision has been interpreted to mean that overtime must be paid to an employee whose pass days are changed only after the pass days have been posted.

Many hundreds of correction officers are reserve members of the Armed Forces.

---

[*] Honorable Donald P. Lay, Senior Circuit Court Judge for the United States Court of Appeals for the Eighth Circuit, sitting by designation.

1. Pursuant to Public Law 102–568, 106 Stat. 4340, 4341, 38 U.S.C. §§ 2021–2027 were renumbered as 38 U.S.C. §§ 4301–4307 on October 29, 1992.

Counsel in this case have stipulated the plaintiff class to consist of approximately 970 members. When a temporary vacancy is created because an officer is performing military duties, the position must be filled by another officer to ensure that the correctional facility is adequately staffed. The substituting officer is entitled to overtime. During a 1981 state investigation following complaints about military leave procedures, many abuses were discovered. Those included, for example, employees failing to report to the military after being granted leave by the Department, departing early from military duty, or submitting fictitious military leave orders. About 47 percent of the 245 audited military leave cases were found to be without supporting documentation. Those abuses allegedly cost the State of New York millions of dollars.

In response to this perceived drain on the public fisc, the Department promulgated the subject Directive No. 2212 setting forth procedures for requesting, approving and verifying the use of paid military leave by employees. By applying Directive No. 2212 the Department was able to change employees' days off to coincide with their military duty days, thereby reducing overtime necessary to fill vacancies that would have occurred had the officer been performing military duty on a regularly assigned work day. The result is that employee-reservists before passage of the Directive worked three days and were paid for five—three days work, two days off without pay, followed by two days of military duty for which they were paid. After the Directive, the same individuals had to work five days to get paid for five days, the two days of military duty being on non-pay pass days.

In its March 2, 1993 judgment following a non-jury trial, the district court first found plaintiffs' rights to pass days were protected by their collective bargaining agreement, and since Directive No. 2212 denied plaintiffs an incident or advantage of their employment because of their military reservist obligations, the Department's action, the trial court concluded, also violated 38 U.S.C. § 4301(b)(3). It therefore made the following award to plaintiffs: compensation for lost wages, measured by the salary the employees would have been paid had their pass days not been reassigned, limited to the first 30 days compensable under N.Y.Mil.Law § 242(5); damages to employees who had taken personal leave or vacation leave instead of applying for military leave; prejudgment interest and attorney's fees.

This calculation of plaintiffs' damages was set forth in the district court's February 19, 1987 decision and order, and explained further in its December 31, 1991 decision and order. In the later decision, the trial judge indicated that compensation for lost wages was to be measured at the overtime rate:

reflecting both (1) the pay plaintiffs would have received had the military days occurred on non-pass days (which would have happened absent defendants' rescheduling), and (2) that, since plaintiffs worked five full days and had two military days that, absent rescheduling, would have been compensable, the military days should count towards overtime for those weeks, in accordance with provisions of the collective bargaining agreement.

The Department appeals the ruling that held assigned pass days were an incident or advantage of employment, and that further held the application of Directive No. 2212 violated both the collective bargaining agreement *and* § 4301(b)(3) of the Veterans' Act. The Department also appeals the damage award maintaining that (1) the Eleventh Amendment bars the award of retroactive monetary damages against the state; (2) if retroactive monetary damages are appropriate, they were calculated incorrectly; and (3) attorney's fees are not available through application of 42 U.S.C. § 1988. The plaintiffs have cross-appealed because overtime damages were limited to the first 30 days compensable under N.Y.Mil.Law § 242(5). The award of prejudgment interest is not challenged on appeal. We pass to a discussion of these issues.

## DISCUSSION

### I  *Plaintiffs' Rights*

#### A.  *Under The Collective Bargaining Agreement*

■ We must ascertain first whether Directive No. 2212, which made employee-re-

servists perform their military duties on their regular days off, violated the collective bargaining agreement. The district court found plaintiffs' right to assigned pass days, secured through an exercise of seniority, was a right protected by the labor agreement. We review this finding under the clearly erroneous standard, *see* Fed.R.Civ.P. 52(a), and that finding need only be plausible when examining the record as a whole. *See Anderson v. Bessemer City*, 470 U.S. 564, 573–74, 105 S.Ct. 1504, 1511–12, 84 L.Ed.2d 518 (1985).

■ Under Article 24 of the labor agreement the Department reserved to itself the right to make any job or shift assignment necessary to maintain the services of the Department. It is required to post for 30 days all permanent vacancies before making a permanent assignment. As related, employees select their work assignments by bidding on work packages that contain the particular shift to be worked, its location and the pass day or days off schedule. Because pass days are advertised to employees as a combined package along with shift and work location, the successful bidder is awarded the entire work package.

Paragraph 24.2 further provides "[s]eniority shall be the basis by which employees shall select pass days." Seniority is defined in ¶ 24.1 of the labor agreement as "the length of an employee's uninterrupted service in title in a department or agency including sick leave, military leaves not to exceed four years and other leaves of absence which do not exceed one year and Worker's Compensation leave." The district court ruled that once an employee is assigned a work package the pass days are set and regularly scheduled for as long as the employee remains a member of that particular workshift.

■ The trial court also found that ¶ 15.3(e)—which provides that "[r]egularly scheduled days off shall not be changed for the purpose of avoiding the payment of overtime"—protects employees from having their assigned pass days changed. The Department contends this provision merely restrains it as employer from making *ad hoc* changes to an individual employee's pass

days, but that it does not bar the Department from limiting overtime by making general policy decisions. The Department's argument has a plausible ring to it, but the plain language of ¶ 15.3(e) is to the contrary. It prohibits the Department from changing pass days cast in the guise of a departmental policy, which in practice allow the Department to avoid the payment of overtime, whether the pass day change occurred once and only affected one employee or whether it occurred, as here, thousands of times and affected many employees.

■ Nonetheless, the Department maintains, a November 1976 settlement agreement reached in a suit by campus police officers at the State University of New York (SUNY) at Plattsburg regarding the rescheduling of days off changed the application of ¶ 15.3(e) for correction officers. The State of New York Office of Employee Relations and Council 82 entered into the so-called Boas settlement agreement, which interpreted ¶ 15.3(e) (then Article 16.3(e) of a predecessor labor agreement) as follows: "[e]xcept in the case of an emergency or due to unforeseen circumstances, any employee whose posted regularly scheduled day off is changed shall be paid at the overtime rate that day." The SUNY campus police officers are covered by the same collective bargaining agreement as the correction officers, but they are on a work schedule where management posts job assignments 28 days before the work schedule goes into effect. Employees have to refer to the posted schedule to determine what shifts and rest days management has assigned.

The Department insists the Boas settlement applies to the correction officers and, after an employee's pass days are posted, they may be changed provided the employee is paid overtime for the changed pass day. The Boas settlement attempted to reconcile the charge that the Department was making changes in days off to avoid paying overtime. Nevertheless, no evidence at trial showed that the pass days of the correction officers before us were posted within the meaning of the Boas settlement. Nor is there any language in the settlement making it applicable

beyond the SUNY system. Joseph Bress who signed the settlement on behalf of the State of New York testified at trial that he and Carl Gray, former Executive Director for Council 82, agreed that it applied to the Council 82 contract generally. He further testified that the Office of Employee Relations had applied the settlement agreement subsequent to its signing and that it was still being applied as a matter of practice between the parties. Based on his testimony, the Department urges that the Boas settlement be enforced against the present plaintiffs. Mr. Gray, who signed the Boas settlement on behalf of Council 82, averred that when it was signed it was intended to apply solely to SUNY security officers. Richard Bischert, District Director for Council 82, also stated the application of the Boas settlement was limited to university police.

Although the district court did not address the Boas settlement explicitly, it took considerable testimony on this subject and obviously considered whether the settlement agreement was applicable when it discussed the Department's negotiation strategy regarding the attempted elimination of ¶ 15.3(e) from the labor agreement. In addition, the record reveals that the trial court was fully aware of the details and complexities of the Boas settlement. Hence, in failing to make a finding that the Boas settlement applied to the correction officers, it impliedly found it did not. Refusing to give effect to the Boas settlement was a determination the district court made based on the credibility of witnesses who gave conflicting testimony and may not be said to be clearly erroneous in light of the record evidence, even though a contrary view would not be unreasonable. See Anderson, 470 U.S. at 574, 105 S.Ct. at 1512.

On March 30, 1982 after a year-long investigation into the earlier recited military leave abuses, the Department issued Directive No. 2212 setting forth procedures for requesting, approving and verifying the use of paid military leave by Department employees. Employees were directed to provide their watch commander with a copy of each quarterly military training schedule. The directive advised employees that "[t]he Deployment Lieutenant/Attendance Control Office will review the quarterly training schedules and extra ordered military duty so that, when practicable and consistent with the Department's personnel requirements, regular days off and shift assignments may be revised to avoid military drills during scheduled working hours." Employees were also informed that "[t]he entire thirty (30) days paid military leave allowance must be used before military leave without pay, or the use of accrued vacation, personal leave or holiday leaves may be granted."

According to the Department, Directive No. 2212 was designed to mitigate military leave abuses, reduce global overtime and other costs caused by absenteeism through this abuse, minimize use of vacation and personal leave for military duty and maintain the fullest possible complement of employees at correctional facilities throughout the state. Prior to its adoption, the Department did not change the pass days of any of the affected employees to coincide with their military duty days. Instead, if military duty fell on an employee's scheduled work day he or she was granted military leave and still retained his or her assigned pass days. By using the authorization contained in Directive No. 2212, the Department was able to reschedule 15,950 pass days.

We agree with the district court's findings that the Department had twin purposes in rescheduling pass days: to provide the increased manpower needed to fulfill the duties mandated by law and to reduce overtime compensation. We also agree with the trial court's conclusion that the Department violated article 24 of the collective bargaining agreement when it rescheduled appellees' pass days. It is evident that application of the Directive altered the seniority provisions of ¶¶ 24.1 and 24.2 of the labor agreement since employees could not select pass days independently of the seniority-based selection of the entire job package. Further, the Directive authorized the Department to change pass days to avoid paying overtime contrary to the provisions of ¶ 15.3(e) of the labor agreement. Because the language of ¶ 15.3(e) does not require that avoiding the payment of overtime be the *sole* reason for changing pass days, the finding that the Di-

rective violated that provision of the labor contract is not clearly erroneous.

### B. *Under The Veterans' Act*

■ We turn now to analysis of the Veterans' Act. The key provision of that Act states:

Any person who seeks or holds a position [in the employ of a State] shall not be denied hiring, retention in employment, or any promotion or other incident or advantage of employment because of any obligation as a member of a Reserve component of the Armed Forces.

38 U.S.C. § 4301(b)(3). The question to be decided is whether the Department's alteration of pass days through the application of Directive No. 2212 deprived plaintiffs of an "incident or advantage of employment" thus violating § 4301(b)(3) of the Veterans' Act. It does not automatically follow, as the district court held, that breach of the collective bargaining agreement is a violation of the Veterans' Act.

In *Monroe v. Standard Oil Co.*, 452 U.S. 549, 552 n. 2, 101 S.Ct. 2510, 2513 n. 2, 69 L.Ed.2d 226 (1981), the seminal case applying the Veterans' Act to reservists, the Supreme Court concluded § 4301(b)(3) provides protection to both Ready Reservists and National Guardsmen. *See also United States ex rel. Reilly v. New England Teamsters & Trucking Indus. Pension Fund*, 737 F.2d 1274, 1278–79 (2d Cir.1984). Congress' aim in this legislation is plain. It is "to prevent reservists and National Guardsmen not on active duty who must attend weekly drills or summer training from being discriminated against in employment because of their Reserve membership." S.Rep. No. 1477, 90th Cong., 2d Sess. 1–2 (1968), *reprinted in* 1968 U.S.C.C.A.N. 3421, 3421. The House Report described the bill as providing:

"job protection for employees with obligations as members of a reserve component. . . .

Section (1) amplifies existing law to make clear that reservists not on active duty, who have a remaining Reserve obligation, whether acquired voluntarily or involuntarily, will nonetheless not be discriminated against by their employees

[*sic*] solely [*sic*] because of such Reserve affiliation.

*It assures that these reservists will be entitled to the same treatment afforded their coworkers without such military obligation.*"

H.R.Rep. No. 1303, 90th Cong., 2d Sess. 3 (1968) (*quoted in Monroe*, 452 U.S. at 558, 101 S.Ct. at 2516 (emphasis added)). In the House Committee hearing Rear Admiral Burton H. Shupper, U.S.N., testified that one aspect of the bill protects employees against being " 'denied retention in employment or advantages of employment because of any obligation as a member of a Reserve component of the Armed Forces.' " *Hearings on H.R. 11509 Before Subcomm. No. 3 of the House Comm. on Armed Services*, 89th Cong., 1st Sess. 5315 (1966) (*quoted in Monroe*, 452 U.S. at 559, 101 S.Ct. at 2516).

■ Section 4304(d) of the Veterans' Act grants an employee the right upon request to be granted leave by the employer "for the period required to perform active duty for training or inactive duty training in the Armed Forces of the United States." Significantly, for our purposes, it was never Congress' purpose in protecting the rights of employee-reservists to afford them special privileges or benefits not available to their co-workers. *See Monroe*, 452 U.S. at 561, 101 S.Ct. at 2517.

■ In order for Directive No. 2212 to violate the Veterans' Act, the awarding of pass days must be considered an "incident or advantage of employment" under § 4301(b)(3), and must be found to be within Congress' focus of "protect[ing] reservists from the temptation of employers to deny them the same treatment afforded their co-workers without military obligations." *Id.* at 560, 101 S.Ct. at 2517. An employer may not by the use of slippery words or a contrived definition deprive its employee-reservists of substantial rights granted them under the Act. *See Accardi v. Pennsylvania R.R.*, 383 U.S. 225, 229, 86 S.Ct. 768, 771, 15 L.Ed.2d 717 (1966).

■ Here the Department characterizes the change of pass days or regular days off

as being less than a substantial right and therefore not covered by the Act. In support of that proposition, the Department points out that the Directive did not reduce plaintiffs' compensation—employee-reservists continued to earn the same amount of pay for the same amount of work as non-reservists—nor did it affect promotion rights or pension rights or the opportunity to earn overtime pay.

Cases holding that an employer has violated the Veterans' Act have involved more dire actions vis-à-vis the employee-reservist's status as an employee: for example, loss of employment, *see Peel v. Florida Department of Transportation,* 600 F.2d 1070, 1073 (5th Cir.1979), or workplace assignment and duties assigned, *see Carlson v. New Hampshire Department of Safety,* 609 F.2d 1024, 1027 (1st Cir.1979) (employer may not permanently reassign an employee to a new post with different duties and work schedule on account of employee's reserve obligation), *cert. denied,* 446 U.S. 913, 100 S.Ct. 1844, 64 L.Ed.2d 267 (1980).

Perhaps one of the most important incidents or advantages of employment is the salary assured by a 40-hour work week guaranteed under a collective bargaining agreement. *See West v. Safeway Stores, Inc.,* 609 F.2d 147, 150 (5th Cir.1980) (employer required to schedule employee's 40-hour work week around the employee's military training obligation). In the case at hand, plaintiffs were paid for and worked a full 40-hour week. Concededly, plaintiffs lost the privilege of working 24 hours and being paid as though they had worked 40 hours, a benefit they previously enjoyed before the advent of Directive No. 2212. But the new rule did not penalize them, or treat them differently than the other non-reservist correction officers, on account of their reservist status.

Decisions under the Veterans' Act differ with respect to a contractual obligation to afford opportunities to earn overtime. *Compare Breeding v. TRW, Inc., Ross Gear Div.,* 477 F.Supp. 1177, 1184 (M.D.Tenn.1979) (where collective bargaining agreement provides opportunities to work overtime such must be offered to employees equally; an employee unavailable to work overtime on account of military training was not entitled under the Act to an alternative opportunity), *aff'd,* 665 F.2d 1043 (6th Cir.1981) *with Lott v. Goodyear Aerospace Corp.,* 395 F.Supp. 866, 869–70 (N.D.Ohio 1975) (similar circumstance held to deny the employee an incident of employment) *and Carney v. Cummins Engine Co.,* 602 F.2d 763, 766–67 (7th Cir. 1979) (employer must grant employee overtime opportunities missed by reason of National Guard service), *cert. denied,* 444 U.S. 1073, 100 S.Ct. 1018, 62 L.Ed.2d 754 (1980).

In the present litigation the reservists were not seeking the opportunity to earn overtime. It was their co-workers substituting for the reservists who earned such pay. As the district court found in its February 19, 1987 decision, "the overtime of the particular National Guardsman/Reservist whose pass days are being changed may not be affected." Section 4301(b)(3) has as its aim the limited purpose of safeguarding the employee-reservist from discrimination such as a failure to promote or a discharge prompted solely by the employee's reserve status. *See Monroe,* 452 U.S. at 559, 101 S.Ct. at 2516. True, the Department's action touched the general subject of overtime, but it did not diminish a reservists' right to earn overtime pay when he or she worked overtime. The changing of a reservist's pass days is not a substantial right such as, for instance, discharge, demotion, or failure to promote, all matters safeguarded by the Act.

In sum, the district court wrongly ruled that the violation of the collective bargaining agreement by itself constituted a violation of § 4301(b)(3). Directive No. 2212 did not deprive plaintiffs of an "incident or advantage of employment" in violation of the Veterans' Act. Accordingly, we need not reach the issue of whether the Eleventh Amendment bars the award of retroactive damages against the state.

## II  Damages

Discussion now proceeds to the issue of damages. The contractual breach of plaintiffs' collective bargaining agreement caused by the Directive gives rise to damages. The labor agreement provides at ¶ 15.1(g) that

"[t]ime during which an employee is excused from work because of vacation, holidays, personal leave, sick leave at full pay, compensatory time off or other leave at full pay shall be considered as time worked for the purpose of computing overtime." In its February 19, 1987 decision the district court found plaintiffs "lost the value of their pass days, which value is to be measured by the salary they would have been paid, had their pass days not been reassigned and they had been granted military leave." The parties were directed to submit information regarding the number of pass days reassigned for each member of plaintiffs' class since March 30, 1982 and the wages each member would have received had pass days not been reassigned to coincide with military leave days.

Because we hold there was no violation of the Veterans' Act, we affirm the calculation of damages for plaintiffs set forth in the trial court's December 31, 1991 decision only as related to a breach of the collective bargaining agreement. We recognize that pass days rescheduled as a result of Directive No. 2212 will be compensated at the overtime rate and confined to the application of ¶ 15.1(g). Because of the dynamics of ¶ 15.1(g), the district court must review the damage award on an individual basis to ensure it is not of a speculative nature. Damages should not be awarded under the Veterans' Act because it was not transgressed by the Department's promulgation of Directive No. 2212.

■ On plaintiffs' cross-appeal, they contend they should recover straight time for each day in excess of 30 that an officer's pass days were changed to accommodate military reserve duty. This argument is unavoiding because compensation is provided pursuant to N.Y.Mil.Law § 242(5) for only 30 days. Damages should apply up to the 30–day maximum per year authorized by § 242(5) because after these 30 days are used up, the military leave days will no longer be counted under ¶ 15.1(g) as they should not be considered "other leave at full pay" for the purpose of calculating overtime. The district court ruled properly on this aspect of the damages issue.

■ It nonetheless erred when it granted a day's pay to each plaintiff who used ac-

crued personal leave instead of notifying the Department of their military duties. Even though the provisions of Directive No. 2212 authorizing pass days to be changed contravene the collective bargaining agreement, the procedures designed to notify the employer of military duty, if pay was expected under New York Military Law, were valid. By taking personal leave for these days, plaintiffs said in effect that they did not desire to have the benefits of § 242(5). The correction officers should have complied with the Directive and then made a claim. They are not entitled to pay for those days on which they claimed personal leave, sick time or the like. Thus, the damages issue must be remanded in order for the district court to recalculate the award to eliminate this overpayment to plaintiffs.

### III Attorney's Fees pursuant to 42 U.S.C. § 1988

■ The trial court further ruled in its December 31, 1991 decision that although it did not reach the equal protection claim under § 1983, plaintiffs were entitled to attorney's fees because their equal protection claim was substantial, and even though the Veterans' Act does not provide for attorney's fees, neither the statute nor its legislative history precluded awarding attorney's fees under 42 U.S.C. § 1988. This ruling was in error.

Awarding attorney's fees under § 1988 may only be based on plaintiffs' equal protection claim. Here no such claim exists. Plaintiffs do not contend they have a fundamental right to perform military reservist duties on specific days, but instead insist the Department discriminates against them because they are members of a class of military reservists. We find no case law supporting the assertion that a class of military reservists is either a suspect class entitled to strict scrutiny or even a quasi-suspect class entitled to intermediate scrutiny.

We therefore proceed to examine their claim only to be sure that Directive No. 2212 is rationally related to furthering a legitimate state interest. *See Massachusetts Bd. of Retirement v. Murgia,* 427 U.S. 307, 312, 96

S.Ct. 2562, 2566, 49 L.Ed.2d 520 (1976) (per curiam). Two of the Directive's objectives, as we have noted, were the maintenance of adequately staffed correctional facilities and a reduction in abuses of the military leave policy resulting in inordinate overtime. Because the means to accomplish these goals— the changing of correction officers' pass days to coincide with their military duty days—is not a purely arbitrary or irrational means of accomplishing this goal, *see Vance v. Bradley,* 440 U.S. 93, 97, 99 S.Ct. 939, 943, 59 L.Ed.2d 171 (1979), the Directive is rationally related to a legitimate state interest. As a consequence, plaintiffs are not entitled to attorney's fees under § 1988.

■ Even were we to conclude that plaintiffs stated a substantial equal protection claim, Congress planned to supplant a § 1983 claim with the enforcement provisions of the Veterans' Act. The Supreme Court in *Smith v. Robinson,* 468 U.S. 992, 1012, 104 S.Ct. 3457, 3468, 82 L.Ed.2d 746 (1984), instructs that the proper inquiry is whether:

> Congress intended to preclude reliance on § 1983 as a remedy for a substantial equal protection claim. Since 1871, ... § 1983 has stood as an independent safeguard against deprivations of federal constitutional and statutory rights.... Nevertheless, § 1983 is a statutory remedy and Congress retains the authority to repeal it or replace it with an alternative remedy.

*Id.*

A § 1983 cause of action is unavailable "when Congress has foreclosed enforcement of the statute in the statute itself, or when a statutory remedial scheme is so comprehensive that there is an implication that it provides the exclusive remedy foreclosing all other remedies." *Mrs. W. v. Tirozzi,* 832 F.2d 748, 754 (2d Cir.1987); *see also Wright v. City of Roanoke Redev. & Hous. Auth.,* 479 U.S. 418, 423, 107 S.Ct. 766, 770, 93 L.Ed.2d 781 (1987); *Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n,* 453 U.S. 1, 19, 101 S.Ct. 2615, 2626, 69 L.Ed.2d 435 (1981). If a § 1983 cause of action is unavailable, attorney's fees may not be awarded under § 1988. *See* 42 U.S.C. § 1988(b).

The enforcement scheme of the Veterans' Act is particularly detailed and comprehensive. It provides a plaintiff with a private right of action through injunctive relief, compensatory damages in the form of lost wages and/or benefits, and the assistance of the United States attorney. *See* 38 U.S.C. § 4302. Further, no fees or court costs may be assessed against a person seeking benefits under the Act. *See id.* These provisions evidence "a statutory remedial scheme [which] is so comprehensive that there is an implication that it provides the exclusive remedy foreclosing all other remedies." *Mrs. W.,* 832 F.2d at 754. Therefore, attorney's fees could not properly have been awarded in this case even were a viable equal protection claim alleged.

## CONCLUSION

Accordingly, the district court's judgment dated March 2, 1993 is affirmed, in part, reversed, in part, and remanded for recalculation of damages consistent with this opinion. The issue raised on plaintiffs' cross-appeal with respect to the district court's limitation of overtime compensation is affirmed.